[Civ. No. 21847. Second Dist., Div. Three. Feb. 1, 1957.]

THE YOUNGSTOWN STEEL PRODUCTS COMPANY (a Corporation), Respondent, v. THE STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann and James C. Maupin, Deputy Attorneys General, for Appellant.

Chandler, Wright, Tyler and Ward for Respondent.

SHINN, P. J.—Defendant appeals from a judgment awarding plaintiff a refund of $2,698.16 in an action to recover sales taxes paid under protest. Trial was to the court. The sole question presented on this appeal is whether, under the provisions of sections 6011, paragraph 3(b) and 6012, paragraph 3(b) of the Revenue and Taxation Code, as they read prior to their amendment in 1953, plaintiff was obligated to pay a sales tax upon certain sales of steel pipe where the pipe was returned to plaintiff within 90 days after the respective sales but the sales were noted as cancelled and refunds were made at later dates.

Plaintiff, a California corporation, is a wholly owned subsidiary of the Youngstown Sheet and Tube Company, which produces steel pipe at its mills in Ohio and Illinois. Plaintiff maintains a yard for the storage of pipe at Wilmington, California. Upon receipt of pipe from the mills, it is unloaded and stored according to size in a series of numbered racks on the yard and a record of where the pipe is stored is kept at the yard office. When pipe is invoiced to a customer, plaintiff's records are adjusted to show ownership of the pipe in the customer's name. This is accomplished by transferring the inventory information from a stock card and putting it on the customer's card.

The facts of the case are not in dispute. The transactions in question were 29 separate sales of pipe between April 1, 1948 and March 31, 1951. The gross receipts from these sales totaled $86,173.74. Approximately one-half of this amount was represented by nine separate sales in which pipe was invoiced by the parent company at Youngstown, Ohio, and shipped to California either directly to the purchaser or to plaintiff's storage yard to await the purchaser's instructions. The remainder of the $86,173 in gross receipts was represented by 20 separate transactions in which pipe stored at the Wilmington yard was sold for future delivery to the purchasers. The full purchase price, including the sales tax, was paid by

each purchaser within 10 days of the invoice date and the sales tax was reported and paid by plaintiff with its next quarterly return.

All the pipe in question was returned to plaintiff within 90 days after the respective sales dates. The court so found and the finding is not questioned by appellant. However, the respective sales were not formally cancelled and credits to the accounts of the purchasers were not entered until some months later. Plaintiff stored all pipe not delivered and all pipe physically returned at the yard without segregating it from other pipe stored there. Plaintiff subsequently sold the pipe to other purchasers and reported and paid a sales tax on each of the resales. However, plaintiff took credit for the undelivered pipe on previous sales in its returns for the quarterly periods in which credits were entered for the cancelled orders. In 1951 defendant ordered a field audit of plaintiff's records and filed a notice of determination in which it claimed that a sales tax was due on the 29 rescinded transactions. Plaintiff's petition for redetermination was denied as to those sales and plaintiff paid the sales tax under protest. Plaintiff's claim for refund was likewise denied by the Board.

Prior to the amendment of section 6011, subdivision (b), of the Revenue and Taxation Code in 1953, there was excluded from the sales price: ''The amount charged for property returned by customers upon rescission of the contract of sale when the entire amount charged therefor is refunded either in cash or credit, and when the property is returned within 90 days from the date of purchase.'' Prior to the amendment of section 6012, subdivision (b), in 1953,[1] there was excluded

---

[1]In 1953, the Legislature amended those sections to read as follows: ''Section 6011.

'' 'Sales price' does not include any of the following:

. . . . . . . . . . . .

'' (b) The amount charged for property returned by customers when that entire amount is refunded either in cash or credit, but this exclusion shall not apply in any instance when the customer, in order to obtain the refund, is required to purchase other property at a price greater than the amount charged for the property that is returned.''

''Section 6012.

'' 'Gross receipts' do not include any of the following:

. . . . . . . . . . . .

'' (b) Sale price of property returned by customers when the full sale price is refunded either in cash or credit, but this exclusion shall not apply in any instance when the customer, in order to obtain the refund, is required to purchase other property at a price greater than the amount charged for the property that is returned.''

from the "gross receipts": "Sale price of property returned by customers upon rescission of the contract of sale when the full sale price is refunded either in cash or credit, and when the property is returned within 90 days from the date of sale." The words "and when the property is returned within 90 days from the date of purchase [sale]" had been added to those sections in 1945.

The court concluded that under the language of sections 6011, subdivision (b), and 6012, subdivision (b), as they read prior to 1953, as applied to the facts that the pipe had been returned to plaintiff within the several 90-day periods and the purchase prices had been refunded, plaintiff was entitled to a refund of the tax it had paid on the rescinded transactions.

The board contends that the court's construction of sections 6011, subdivision (b), and 6012, subdivision (b), is erroneous. In this connection, defendant argues that the return of the property must be pursuant to a rescission, the rescission must be contemporaneous with the return of the property, and both must occur within 90 days of the original sale. Defendant's reasoning is predicated upon the clause "property returned by customers upon rescission of the contract of sale." The word "upon" is defined as "with little or no interval after." Hence, defendant argues, the sections must be taken to exclude only the sales price or the amount charged for "property returned by customers with little or no interval after rescission of the contract of sale," etc.

Under the literal construction of sections 6011 and 6012 insisted upon by appellant, it would seem that in order to become entitled to a credit the buyer would not only have to return the property within 90 days but would have to be given a refund within that time. But an agreement to credit the purchase price is a refund, and, as we shall point out, accomplishes a rescission even though credit is entered later. Appellant's tax counsel twice ruled that under the 1945 amendment a deduction was allowable if the property was returned within 90 days, even though credit was given at some later date. (See CCH State Tax Reporter, California, volume 2, paragraphs 60-356.052 and 60-356.054.)

Under the law in effect at the times of the transactions in question three things were necessary to avoid liability for a tax on sales where the buyer returned the property, (1) rescission of the sale, (2) refund of the purchase price in cash or by credit, and (3) return of the property within

90 days. ▇ In ascertaining the significance of the addition in 1945 of the phrase ''and when the property is returned within 90 days from the date of sale,'' we turn to appropriate sources of information as to the purpose the legislation was intended to accomplish. In September 1943 sales tax ruling Number 50 read in part: ''If there has been a substantial use of the property and the credit is pursuant to an agreement that the full selling price would be allowed on the purchase of property of substantially greater value, . . . it will be presumed that the contract of sale was not rescinded and the property was traded in; . . .'' Appellant proposed to substitute for the above the following: ''The tax does not apply when: (1) The customer returns the property and the sale is rescinded under the terms of the agreement as in the case of a sale 'on trial,' 'on satisfaction,' 'on sale or return' or similar terms or pursuant to the election of the customer as in the case of a breach of warranty, and (2) The full sale price, including that portion designated to be on account of 'sales tax,' is refunded or credited to the customer.'' The attorney general approved the change, stating in part ''the contract of sale is rescinded when the customer exercises his option to return the property (citations). The full sale price is refunded in credit. Thus we have a situation in which there is refunded in credit the full sale price of property returned by customers upon rescission of the contract of sale and this satisfies the requirement of the statute.'' But there still remained the problem arising from the practice of requiring the buyer upon the return of used property for credit to purchase other property of substantially greater value. Under rule 50, before revision, it was presumed that in such cases the contract of sale had not been rescinded but that the property was merely traded in. The rule as amended did not bar exemption from taxation in case of trade-ins nor did it provide a method for distinguishing between trade-ins and rescissions.

It was clearly the purpose in the enactment of the 1945 amendment to provide a test by which the bona fides of the parties in the return of property would be measured. Accordingly, 90 days was fixed as the time within which a buyer might return the property and obtain full credit even though it had been substantially used. The result was that if the property was returned within that time it could be deemed a rescission but if it was returned later it would be deemed merely a trade-in. However, the 1945 amendment was not

effectual to eliminate the practice under which a buyer, in order to obtain full credit, would have to buy property of greater value. Even though the property was returned within 90 days it might still have been a trade-in and not a bona fide rescission. ■ The clear purpose of the 1953 amendment which eliminated the 90-day provision and added "but this exclusion shall not apply in any instance when the customer, in order to obtain the refund, is required to purchase other property at a price greater than the amount charged for the property that is returned," was to provide a better test for determining whether a given transaction was a bona fire rescission or merely a trade-in.

■ The amendment only provided a better means for accomplishing the purpose of the 90-day provision, and since both had a single purpose, it is proper to consider the later legislative act as illustrative of the scope of the earlier one. (*Martin* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 478, 484 [116 P.2d 71]; *Standard Oil Co.* v. *Johnson*, 24 Cal.2d 40, 48 [147 P.2d 577].)

Return of the pipe within 90 days and allowance of full credit, without further condition, was as effectual under the law in force at the time of the transactions as it would have been had they occurred after the law was amended.

The arguments of appellant are untenable for another reason. In view of the court's findings of particular facts the word "rescission" loses its significance. It means that each party returns or agrees to return what he received in the transaction. The word as used in the statute serves a purpose. It excludes all transactions in which the original sale is treated as binding upon the parties. The 1953 amendment made it certain that "trade-ins" on larger purchases could not be claimed to be rescissions.

The findings that the purchasers of the pipe in question returned it and that plaintiff accepted it and later cancelled the sales and gave credit for the purchase prices imply there were at the times the pipe was returned mutual releases from the sales agreements. Appellant does not question that the findings should be so construed. If the parties understood that credit would be given for the pipe that was returned, rescission of the purchases was thereby sufficiently accomplished and another finding that there was a rescission would have been redundant.

The court found that plaintiff cancelled the orders and entered the credits after the expiration of the respective

90-day periods. But the purchasers became entitled to credit when they returned the pipe; and if any of them had changed their minds, and found they had use for the pipe, it would have been necessary for them to make new purchase agreements, which, of course, would have been taxable. The fact that none of them who had returned pipe within 90 days discovered any need for it was convincing evidence that the purchase agreements had been rescinded by return of the pipe and the agreements to give credit.

The findings, when interpreted fairly and in a manner consistent with the conclusions and judgment, clearly establish plaintiff's claim to the refund, the amount of which is not in question.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.