THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.* RAFAEL VILLALBA SUÁREZ, Defendant and Appellee.

No. 486. Decided October 30, 1962.

302

*J. B. Fernández Badillo, Solicitor General,* and *Genoveva R. Carrera, Assistant Solicitor General,* for The People. *Godofredo M. Gaetán* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The only question raised in this appeal is to determine whether or not the complaint filed against appellee in the District Court, San Juan Part adduces facts sufficient to constitute a crime. Defendant was charged "that on February 20, 1959, about 4:12 p.m., and in the 'BARANDILLA' in San Juan, Puerto Rico, the aforesaid accused RAFAEL VILLALBA SUÁREZ, then and there, unlawfully, wilfully, maliciously, criminally, and knowingly violated the provisions of § 9c of Act No. 194 of 1951 (Puerto Rico Racing Act), consisting in that on the aforesaid date, hour and place he offered me and accepted an illegal bet with relation to the probable order of arrival of the THIRD RACE which was held on the aforesaid February 20, 1959 in 'El Comandante' race track of Puerto Rico and which bet was not legally registered in the aforesaid race track on that day, a play made for 'ILLEGAL PARI-MUTUEL BET.' In the third race I bet on horse No. 8 named 'GALICIA', which ran next to the horses YUCA, CORRE CORRE, EL PILLO, CORREGIDOR II, MIRIAM, PRÓDIGO, FIESTA, CORSARIO, and PAPO. The bet consisted in that the horse on which I bet, 'GALICIA', would arrive second in the aforesaid

race. I paid to defendant herein, RAFAEL VILLALBA SUÁREZ, the amount of $1 for said illegal bet and at the moment it was made, the races had already started in the aforesaid race track and the *bancas* outside the structure of the race track could not accept bets to be registered in any way in the aforesaid race track."

 Section 9c added to the "Puerto Rico Racing Act" of 1950 (Act No. 421 of May 14, 1950)—15 L.P.R.A. § 181 *et seq.*—by Act No. 194 of 1951—15 L.P.R.A. § 191—which has been allegedly violated provided [1] the following in its pertinent part:

"Any person . . . who offers or accepts any bet with relation to the probable position in which any race horse will finish in violation hereof, shall be guilty of a misdemeanor, and shall, upon conviction thereof, be punished by a fine . . ."

The District Court, which first heard the case, determined that the facts charged did not constitute a public offense. This decision was reviewed by certiorari by the Superior Court, and affirmed. We issued writ of review to determine the correctness thereof.

Defendant's contention is that the Racing Act of 1950, as amended in 1951, provided absolutely nothing with relation to the way in which the bets may be carried out respecting horse races. And since nothing was provided on that score, the facts alleged in the information could not constitute a crime, since, as we have seen, what the law established as constituting a crime was to offer or accept a bet "in violation of this law." In his argument appellee also contends that while it is true that the aforecited law authorized the Racing Commission, an agency created by said law, to regulate all matters concerning the sport of racing and that actually, the latter promulgated rules in order to carry out the bets, this regulation is not the law referred to by § 9c alleged to have been violated.

---

[1] This Act was repealed by Act No. 149 of July 22, 1960, 15 L.P.R.A. § 181 *et seq.* (1961 ed.).

The question raised requires an analysis of the law. The Racing Act of 1950 as amended by that of 1951 created an administrative organ, the Racing Commission, and authorized this body to "regulate...all matters concerning the sport of racing in Puerto Rico." Section 4; 15 L.P.R.A. § 184. It enumerated in detail all the powers granted, but established that this enumeration did not limit its powers. Among those enumerated was the one which reads: "To regulate all matters relating to the manner in which bets shall be placed in the German pari-mutuels, pools, mutuels, subscription funds, double entry, daily doubles, or any other betting system." It likewise provided that "The Commission shall, after a public hearing, prepare the rules and regulations for the sport of racing, and the said rules and regulations shall, after they are approved by the Governor and published by the Commission, have the force of law, and the violation thereof shall constitute a misdemeanor, punishable as herein provided." The Commission promulgated regulations and provided, among other manifold details, the manner in which bets would be accepted.[2]

---

[2] It was provided in this respect that:

"It shall be understood as German pari-mutuel bets, for the effects of these regulations, the section or ticket windows designated for the sale of cash bets on horses taking part in each race.

"German pari-mutuel bets shall be effected only on the premises of the race tracks authorized by the Racing Commission of Puerto Rico, and on racing days.

"Betting tickets, books or booklets used by each race track for the functioning of the German pari-mutuel game shall have to be previously authorized by the Racing Commission of Puerto Rico and are subject to inspection at any time by the Racing Commission or its inspectors, duly authorized to do so, and same cannot be altered, modified or changed without the previous authorization of the Racing Commission of Puerto Rico.

"The Racing Commission of Puerto Rico will have the right to suspend for justified cause and at any time, the German pari-mutuel bets; provided that the suspension cannot be at any time for a period of more than 60 days in any natural year.

"The corporation, society or owner of the track will be entitled to appoint a manager for each pari-mutuel section. The manager

Hence, the law provided that to offer or to accept bets in violation of the law shall constitute a crime; it likewise provided that certain other actions with relation to the sport of racing shall also constitute a crime and it established the penalties which its violation would entail, but authorized an administrative agency to establish rules on all matters, concerning that sport, among others, how bets would be made, and it provided that these rules would have the force of law and their violation would constitute a misdemeanor punishable as the law itself provided. Thus the Legislature exercised its power to impose the penalty entailed by the violation of the regulations the promulgation of which was delegated to the Racing Commission. That is, the law itself provided that whoever violated the reglamentary provisions approved by the Racing Commission would be punished as established by the aforecited § 9c. The same thing applied to the other provisions of the law.

The accused invokes the case of *United States* v. *Eaton*, 144 U.S. 677 (1892), but the facts which came before the federal court were different. In the case of *Singer* v. *United States*, 323 U.S. 338 (1945) the case of Eaton was explained as follows:

"The *Eaton* case involved a statute which levied a tax on oleomargarine and regulated in detail oleomargarine manufacturers. Sec. 5 of the statute provided for the keeping of such books and records as the Secretary of the Treasury might require. But it provided no penalty for non-compliance. Other sections, however, laid down other requirements for manufacturers and prescribed penalties for violations. Sec. 20 gave

---

will be responsible, before the official inspector, of all infractions and irregularities committed thereof.

"Each pari-mutuel section will have an electric buzzer connected with the stewards stand in order for them to announce the closing time for bets on each race. As soon as the horses leave the paddock the stewards will ring the buzzer as first warning and once the horses are close to the starting gate, they will ring the buzzer for the second time as warning that all pari-mutuel bets are to be stopped immediately." 15 R.&R.P.R. § 184–313.

the Secretary the power to make 'all needful regulations' for enforcing the Act. A regulation was promulgated under § 20 requiring wholesalers to keep a prescribed record. The prosecution was for non-compliance with that regulation. Sec. 18 imposed criminal penalties for failure to do any of the things 'required by law.' The Court held that the violation of the regulation promulgated under § 20 was not an offense. It reasoned that since Congress had prescribed penalties for certain acts but not for the failure to keep books the omission could not be supplied by regulation. And Congress had not added criminal sanctions to the rules promulgated under § 20 of that Act."

In the law, as interpreted in the case of Eaton, the wholesale dealers in oleomargarine were required to perform certain acts and a penalty for not doing so was provided. It also provided for the keeping of books in order to compile certain information, but it provided no penalty for noncompliance. Later, other details were added which had to be included in the information to be compiled in the books and the penalty for noncompliance was established, but Congress had not authorized the imposing of penalties in the Regulation. The situation in the present case is different. The Racing Commission was expressly authorized by the Legislature to regulate all matters concerning the sport of racing, specifically including the manner in which bets were to be made. Then it expressly provided that that regulation would have the force of law and that any violation thereof would be punishable as provided in the Act itself. Section 9c cannot be read completely isolated from the other provisions of the law. Section 9c must be considered jointly with the provisions copied above referring to the power of the Racing Commission to regulate the holding of horse races. It is appropriate to cite the interpretation given by the Supreme Court of the United States to the case of Eaton in that of Singer:

"*United States* v. *Eaton* turned on its special facts, as *United States* v. *Grimaud*, 220 U.S. 506, 518–519, emphasizes. It has

not been construed to state a fixed principle that a regulation can never be a 'law' for purposes of criminal prosecutions. It may or may not be, depending on the structure of the particular statute."

And that is precisely the situation in the case at bar. The Regulation supplements the law.

 It is pointed out that in the new Racing Act of 1960—15 L.P.R.A. § 181 *et seq.* (1961 ed.)—it was provided in § 16, which corresponds to the one allegedly violated in the case at bar, that "Any person...who offers or accepts any bet with relation to the probable position in which any race horse will finish, in violation of this act and/or *the regulations of the board...*" (italics added), the Legislature showing thereby, upon adding the concept of "violation of the regulations" that the Act of 1951 did not cover this aspect. As a general rule the amendment or re-enactment of a statute by adding or supplementing it with concepts, constitutes evidence of the intention of altering its meaning. *Commonwealth, ex rel. Lektrich* v. *Ydrach*, 77 P.R.R. 38 (1954). Now, there are times when doubts arise as to the meaning of the language used, or as to the force of a statutory provision, and then the Legislature amends it. On those occasions, the amendment does not alter, but explains or clarifies. *Cranford* v. *City of Lake Charles*, 92 So. 2d 141 (La. 1957); *Youngstown Steel Prod. Co.* v. *State Board of Equal.*, 306 P.2d 983 (Cal. 1957); *Scribner* v. *Sachs*, 164 N.E.2d 481 (Ill. 1960); *In Re Petition of Detroit Edison Company*, 87 N.W.2d 126 (Mich. 1957); *County Bd. of Equalization* v. *Muskogee Ind. Fin. Corp.*, 357 P.2d 224 (Okla. 1960); *City of Redfield* v. *Wharton*, 115 N.W.2d 329 (S.D. 1962); *Lewis* v. *Annie Creek Mining Co.*, 48 N.W.2d 815 (S.D. 1951); and see also, *People* v. *Superior Court*, 81 P.R.R. 740, 760–61 (1960).

The information in the present case was filed in the District Court about the middle of 1959. In March 1960 the accused filed a brief in support of his contention that the information did not adduce facts sufficient to constitute a

crime, and the judge of that court so determined in a decision rendered June 1, 1960. The new Racing Act was approved by the Legislature towards the end of June 1960, Journal of Proceedings of the Legislative Assembly 2268 (1960) and by the Governor on the following July 22. It seems appropriate to cite from *Cranford* v. *City of Lake Charles*, *supra*, to the effect that "if an amendment follows soon after controversies have arisen as to the meaning of the original act, there is reasonable likelihood and it is logical to believe it was merely intended to clarify the meaning of the preexisting law..."

■ Appellee maintains besides that even supposing that by § 9c a public offense is established, the same would only apply to illegal bets made within the race tracks. In order to support his position he cites the report of the Committee which in the House of Representatives considered the bill which became the law amending the Act of 1951. In the aforesaid report the Committee subscribes to the project submitted by the Racing Administrator and which explained the purpose of § 9c thus:

"The amendment recommended to be introduced to § 9c which is added by virtue of this bill, is intended to cover those betting situations between persons as to the probable outcome of a race or probable order of arrival of any race horse at any race. It is more or less what has been done in other sports in Puerto Rico, specially in the baseball game where this type of betting in the public is absolutely prohibited and punishable by law. Experience has shown us that persons who bet in this manner, have been in the past years the instigators of riots and scandals in the race tracks of Puerto Rico. For this reason the complete eradication of such a corrupt and illicit practice is necessary." Journal of Proceedings, House of Representatives 1151, 1158 (1951).

As may be seen, the report states that "the complete eradication of such a corrupt and illicit practice is necessary." Certainly, eradication would not have been complete

if the "corrupt and illicit practice" of illegal betting outside the territorial limits of the race track would have been permitted. If the intention of the House would have been to establish the commission of the crime prohibited by § 9c only when bets were accepted or offered within the race tracks, it would have been very easy to express this clearly in the law. That this is so, is shown by the fact that the new Racing Act, in its § 16—15 L.P.R.A. § 196 (1961 ed.)—expressly set forth that "The provisions of this section are applicable to any violation of this act committed anywhere within or without the territorial limits of a race track." So that there would be no doubt whatsoever as to what the intention was, the Legislature expressly set it forth. It would be absurd to maintain, that under the previous Act the Legislature sanctioned the offer and acceptance of bets outside the race tracks, without any kind of regulation by the Racing Commission, if the intention was to completely eradicate that corrupt and illicit practice. But there is something else; the Regulation promulgated by the Racing Commission—effective on the date of the commission of the facts which gave rise to the complaint and which, as we have seen, has the force of law—expressly provided that the *bancas* "shall be effected only on the premises of the race tracks authorized by the Racing Commission of Puerto Rico, and on racing days."

For the foregoing reasons, the judgment rendered by the Superior Court, San Juan Part on February 3, 1961 is reversed and the case remanded for further proceedings not incompatible with this opinion.