[S.F. No. 23803. Aug. 17, 1978.]

BERT A. BETTS, Petitioner, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Respondents.

**COUNSEL**

Barbara Lang Betts for Petitioner.

Loren E. McMaster, Michael D. Stump and James Delaney as Amici Curiae on behalf of Petitioner.

Donald M. Pach for Respondents.

**OPINION**

**RICHARDSON, J.—** ▮▮▮ Petitioner, who served as Treasurer of the State of California from 1959 to 1967, seeks a writ of mandate directing respondent Board of Administration (Board) of the Public Employees' Retirement System to compute his retirement benefit on the basis of the salary payable to the present Treasurer, rather than on the basis of the highest salary received by petitioner during his term of office. The principal issue involves the effect of 1974 amendments to the Legislators' Retirement Law (Gov. Code, § 9350 et seq.) which replaced a "fluctuating" system of computing retirement benefits with a "fixed" system. We conclude that petitioner is entitled to the relief he seeks and will therefore issue a peremptory writ of mandate. (All statutory references are to the Government Code unless otherwise indicated.)

Petitioner held the office of Treasurer from January 5, 1959, to January 2, 1967. As an elected constitutional officer, being eligible, he chose to participate in the Legislators' Retirement Fund (Fund) while holding office (§ 9355.4).

At all times during petitioner's incumbency, the basic retirement benefit available to retired members of the Fund was governed by section 9359.1, subdivision (b), which then provided, in pertinent part: "The retirement allowance for [a nonlegislative member] . . . is an annual amount equal to five percent (5%) of the compensation payable at the time payments of the allowance fall due, *to the officer holding the office which the retired member last held* prior to his retirement, *or* five percent (5%) of the highest compensation *fixed for such office* during the member's last term or any subsequent term prior to his retirement, whichever is greater, multiplied by [years of service credit] . . . ." (Italics added.) Under this "fluctuating" system, a retired member's monthly allowance would be adjusted periodically throughout the term of the pension to reflect changes in the salary payable to the *current* incumbent of the elective office the member had previously held.

In 1974, after petitioner had left office but before his retirement and application for benefits, the Legislature changed the method of benefit computation. Under amended section 9359.1, the basic benefit allowance became "an annual amount equal to five percent (5%) of the highest compensation received *by the officer* while serving in such [nonlegislative elective] office," multiplied by years of service credit. An additional allowance was provided in certain cases for persons with 24 or more years

of credited service; these provisions do not apply to petitioner. (§ 9359.1, subd. (b).) The amendment was expressly made inapplicable to members who had "retired" on its effective date.

The effect of the 1974 amendment was to substitute a "fixed" system of benefit computation for the prior "fluctuating" system. Under the new law, the basic benefit payable to a member retiring after October 7, 1974, is computed only on the basis of the highest salary he himself received while serving in a constitutional office covered by the Fund.

The highest annual salary received by petitioner as Treasurer was $21,499. In 1969, after petitioner left office, the Treasurer's salary was raised to $35,000 per year, the current level.

In 1976, petitioner retired on the basis of total disability and applied for his benefits from the Fund. He was advised that his allowance would be computed under the 1974 amendment, on the basis of petitioner's highest salary in office, $21,499. Petitioner requested an administrative hearing. The administrative judge found that petitioner was entitled to benefits computed on the basis of the current $35,000 salary, under the law as it existed in 1967, when petitioner left elective office. The Board reversed the determination of the administrative judge and this petition followed.

Petitioner's principal contention is that application of the 1974 amendment to him interferes with his vested contractual right to an earned pension. We agree.

A long line of California decisions has settled the principles applicable to the problems herein presented. ■ A public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment. Such a pension right may not be destroyed, once vested, without impairing a contractual obligation of the employing public entity. (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852-853 [179 P.2d 799].) The employee does not obtain, prior to retirement, any absolute right to fixed or specific benefits, but only to a "substantial or reasonable pension." (*Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 183 [265 P.2d 884].) Moreover, the employee's eligibility for benefits can, of course, be defeated "upon the occurrence of a condition subsequent." (*Kern, supra,* at p. 853.)

■ However, there is a strict limitation on the conditions which may modify the pension system in effect during employment. We have described the applicable principles as follows: "An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citations.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, *and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.* [Citations.] . . . " (*Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765], italics added.) We recently reaffirmed these principles in *Miller* v. *State of California* (1977) 18 Cal.3d 808, 816 [135 Cal.Rptr. 386, 557 P.2d 970].

In *Allen, supra,* we explained why the substitution of a "fixed" system of benefit computation for a "fluctuating" system constitutes a disadvantage to affected employees: "Payment of a fixed amount freezes the benefit at a figure which is based on salary scales preceding retirement, thus the longer an employee is retired on a fixed pension the more likely it is that the amount of his pension will not accurately reflect existing economic conditions, whereas a retired employee receiving a fluctuating pension based on the salaries that active employees are currently receiving can maintain a fairly constant standard of living despite changes in our economy." (45 Cal.2d at p. 132.) In inflationary times, we observed, the resulting disadvantage of a "fixed" system is obvious; but the very unpredictability of economic cycles also "indicates the advantage of a plan for fluctuating benefits which attempts, however roughly, to reflect the actual purchasing power of the dollar . . . ." (45 Cal.2d at p. 132; see also *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 448 [326 P.2d 484]; *Chapin* v. *City Commission* (1957) 149 Cal.App.2d 40, 44-45 [307 P.2d 657].)

Judicial attention has also been given to the subject of "comparable new advantages." The comparative analysis of disadvantages and compensating advantages must focus on the particular employee whose own vested pension rights are involved. (*Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d at pp. 449-453; *Frank* v. *Board of Administration* (1976) 56 Cal.App.3d 236, 245 [128 Cal.Rptr. 378]; see *Abbott* v. *City of San Diego* (1958) 165 Cal.App.2d 511, 518 [332 P.2d 324].) It has been said that the

offsetting improvement must also "relate generally to the benefit that has been diminished." (*Frank, supra,* at p. 244; *Stork* v. *State of California* (1976) 62 Cal.App.3d 465, 471 [133 Cal.Rptr. 207].)

■ The Board urges that 1963 amendments to the pension plan provide the necessary offsetting advantage in this case. In that year, the Legislature added section 9360.9, which requires automatic annual adjustment of pension benefits to reflect upward changes in the cost of living. Each January 1, under this statute, the previous year's benefit is multiplied by that year's average increase in the Bureau of Labor Statistics cost-of-living indices for San Francisco and Los Angeles, respectively, using 1954 as the base year. The product of this calculation becomes the basis of the benefit payable for the ensuing year.

Thus, the Board argues, one "cost of living" formula was simply replaced by another; petitioner, it urges, had no reasonable expectation when he left office that he would enjoy the "double windfall" of the cost-of-living index formula provided by section 9360.9 *plus* the "fluctuating" benefit adjustment, the increasing salary scale, mandated by the pre-1974 version of section 9359.1. Under the circumstances of this case, the Board's contention cannot be sustained.

In asserting that termination of the "fluctuating" system was reasonable here, the Board relies heavily on *Lyon* v. *Flournoy* (1969) 271 Cal.App.2d 774 [76 Cal.Rptr. 869]. The Court of Appeal in *Lyon* faced an unusual fact situation which was historically unique. Petitioner's decedent in that case had retired from the Legislature in 1955 and commenced drawing a monthly allowance from the Fund. At the time of decedent's retirement and for more than 10 years thereafter, the salary for members of the Legislature was $500 per month. Decedent's allowance and, after his death, that of petitioner, his widow, were computed on the basis of this salary.

Meanwhile, repeated attempts to liberalize legislative salaries by constitutional amendment were rejected by the voters; referendum propositions of this kind were defeated in 1958, 1960 and 1962. In 1966, however, a broader partial constitutional revision was successful at the polls. This measure (Proposition 1-A) repealed the $500 per month salary, authorized the Legislature to set its own salaries, and validated a 1966 statute fixing members' salaries at $16,000 per year, beginning with the 1967 term. (See Cal. Const., art. IV, § 4, and former art. XXII, § 6, as adopted Nov. 8, 1966; Gov. Code, § 8901.)

However, the 1966 amendments also included a clause prohibiting any member who had retired prior to 1967 from receiving retirement benefits computed on the basis of the new salaries and limited computation of the retirement benefits of such members to the pre-1967 salary of $500 per month. (Cal. Const., *supra*, art. IV, § 4.) The Legislature incorporated this requirement into the Legislators' Retirement Law itself. (§ 9359.11.)

Petitioner Lyon contended that her husband had earned a "vested right" to computation of benefits on the basis of the salary provided by the 1966 constitutional amendments, under the "fluctuating" system in effect at his retirement. The appellate court concluded that the purpose of a "fluctuating" pension system was to provide retirees some insulation against normal variations in the cost of living; the substantial increase in salary from $500 per month ($6,000 per year) to $16,000 per year, it said, had no relation to this purpose. Rather, it was simply the result of long-term legislative frustration over voter resistance to increased salaries. The Legislature, observed the *Lyon* court, had already compensated retirees for the hardship caused by the 12-year salary "freeze" by its 1963 adoption of the cost-of-living adjustment established in section 9360.9. Petitioner's decedent, said the court, had no "reasonable expectation" while in office that he would enjoy a *double* cost-of-living formula, particularly where his contributions to the Fund had been based on the pre-1967 salary he received. The Legislature, the court concluded, properly forestalled such a "windfall" by replacing one "cost-of-living" factor—the "fluctuating" system of benefit computation based on variations in current salaries—with another—a formula adjustment based directly on increases in the cost of living. (271 Cal.App.2d at pp. 783-786.)

In *Lyon*, accordingly, *after the member's retirement*, the cost-of-living formula in effect during his active service was replaced by another. The Court of Appeal was therefore entirely correct in saying that the decedent had earned no contractual expectation *while in office* that he would receive the benefit of *both* systems. In contrast to *Lyon*, in the instant case, the 1963 enactment of section 9360.9 occurred *during* petitioner's term as Treasurer, which ran from 1959 to 1967; the "fluctuating" system of benefit computation was also in effect during this entire period. ■ An employee's contractual pension expectations are measured by benefits which are in effect not only when employment commences, but which are thereafter conferred during the employee's subsequent tenure.

Thus, in *Abbott* v. *City of Los Angeles, supra,* 50 Cal.2d 438, the city argued that pension benefits added during 1923 had the effect of offsetting the detriments incurred by public safety employees as a result of 1925 and 1927 amendments to the city's pension plan. Rejecting this contention, we said, "the member plaintiffs and the husbands of the widow plaintiffs rendered services to the city after January of 1923 and prior to the amendments of 1925 and 1927, and therefore . . . had earned and vested rights in the retirement benefits already provided by the city charter *during that period of time.* [Citations.] It follows that advantages added prior to *or during* 1923 have no bearing upon the reasonableness of the detriments resulting from the 1925 and 1927 amendments." (50 Cal.2d at p. 449, italics added.) Furthermore, "The benefits conferred under a pension system by changes which are made from time to time prior to the adoption of an amendment imposing a detriment 'have no bearing upon the reasonableness' of the detriment so imposed [citing *Abbott* v. *City of Los Angeles, supra*]; such benefits become a part of the vested rights of the employees when conferred." (*Abbott* v. *City of San Diego, supra,* 165 Cal.App.2d 511, 518; see also *Santin* v. *Cranston* (1967) 250 Cal.App.2d 438, 441 [59 Cal.Rptr. 1].)

■ From application of the foregoing principles to the case before us we conclude that the prior version of section 9359.1 together with section 9360.9, enacted in 1963, form the basis by which petitioner's reasonable pension expectations must be measured. For four years, petitioner provided his services under a statutory scheme which *simultaneously* included both computation methods. Under these circumstances, the 1963 enactment cannot be deemed a "comparable new advantage" offsetting the detriment represented by amendment of section 9359.1 in 1974.

We fully recognize that the effect of our holding is that petitioner thereby receives the benefit of a *double* increment of increase, a troubling result. We can only observe that the Legislature must have intended to provide such benefits to constitutional officers serving between 1963 and 1974 because it left in effect both of the formulae during that 11-year period.

We therefore conclude that the 1974 amendment to section 9359.1 cannot constitutionally be applied to petitioner, because the amendment withdraws benefits to which he earned a vested contractual right while employed. No "comparable new advantages" to petitioner appear in the plan which can offset the detriment he has suffered by replacement of a

"fluctuating" system of benefit computation with a "fixed" system. Petitioner is therefore entitled to have his basic retirement allowance computed on the basis of section 9359.1 as it read when he left office in 1967. Under the formula therein provided, petitioner's basic pension benefit is to be determined periodically on the basis of the current Treasurer's salary, now $35,000 per year.

The result we reach herein makes it unnecessary to consider petitioner's additional contentions.

Let a peremptory writ of mandate issue, directing the Board to vacate and set aside its decision applying the 1974 amendments to petitioner, and to compute petitioner's basic retirement allowance from the Fund according to the formula provided in section 9359.1 as it appeared on January 2, 1967, when he left the office of Treasurer. Petitioner shall recover his costs of suit.

Bird, C. J., Tobriner, J., Clark, J., Manuel, J., Newman, J., and Tamura, J.,* concurred.

On September 14, 1978, the judgment was modified to read as printed above. Mosk, J., did not participate therein..

---

*Assigned by the Chairperson of the Judicial Council.