[Civ. No. 62906. Second Dist., Div. Four. Nov. 29, 1982.]

EVELLE J. YOUNGER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Buchalter, Nemer, Fields, Chrystie & Younger, Benjamin E. King and Kenneth R. Zuetel, Jr., for Plaintiff and Appellant.

Stroock & Stroock & Lavan, William H. Levit, Henry J. Silberberg and Margaret A. Nagle as Amici Curiae on behalf of Plaintiff and Appellant.

Gerald R. Adams and Donald M. Patch for Defendants and Respondents.

## OPINION

**WOODS, P. J.**—Appellant, Evelle J. Younger, appeals from a summary judgment in favor of respondents, State of California, the Board of Administration of the Public Employees' Retirement System, and Carl J. Blechinger, executive officer, and against appellant on his petition for writ of mandate or certiorari, and for declaratory relief.

Appellant served two 4-year terms as Attorney General of the State of California between 1971 and 1978. He subsequently retired and brought the proceeding below contesting the method by which his pension benefits were being calculated.

The issue before us is whether the trial court correctly interpreted the legislative intent of sections 9360.9 and 9360.10 of the Government Code[1] as it applies to the cost of living aspect of appellant's pension benefits.

When appellant took office as the duly elected Attorney General of the State of California in January 1971, the two statutes in issue read, in pertinent part, as follows:

Section 9360.9: "Notwithstanding any other provisions of this chapter, the provisions of this section shall be applicable to all allowances granted by this chapter commencing with each installment paid or payable on or after January 1, 1964." (Added in 1963.)

Section 9360.10: "On or before January 15, 1968, and on or before January 15 of each year thereafter, the amount of any allowances provided by this chapter and not subject to section 9360.9 shall be adjusted by the board to reflect any increase in cost of living occurring after January 1 of the immediately preceding fiscal year." (Added in 1966.)

In 1973, section 9360.9 was amended to add after "January 1, 1964," the words "with respect to members of the Senate or the Assembly not having service in such office during or after the term commencing in 1967 and members who are elective officers of the State whose offices are provided by the Constitution."

Effective October 7, 1974, section 9360.9 was further amended to add after "Constitution" the words "and who were first elected to any such office prior to January 1, 1966."

---

[1] All statutory references are to the Government Code, unless otherwise specified.

Appellant contends that section 9360.9 as it existed in 1971 when he took office, should govern his cost of living pension benefits for his first term; i.e., that all cost of living pension benefits payable pursuant to section 9360.9 should be calculated to reflect the increase in the cost of living from the base year of 1954 to the present. Under section 9360.10, says appellant, cost of living benefits are adjusted annually, using only the prior year as a base, resulting in a far lesser sum to appellant than under section 9360.9.

Respondents contend that section 9360.10 should govern appellant's cost of living adjustments based on the legislative intent in enacting section 9360.9 as a catch-up provision for legislators who had served between 1954 and 1963.

■ We sustain the trial court's finding that appellant had no reasonable expectation of receiving the "catch-up" cost of living increase, because he had not served during the years from 1954 to 1963. Thus, only section 9360.10 was applicable throughout appellant's term in office.

Appellant's reasonable expectation should have been that he would not receive cost of living increases for years he did not work, but only cost of living increases actually occurring after he began to receive his basic allowance. Anything else would constitute a windfall to him.

In *Lyon* v. *Flournoy* (1969) 271 Cal.App.2d 774 [76 Cal.Rptr. 869], the legislative intent behind the Legislators' Retirement Law (§ 9350 et seq.) is discussed at some length. In 1954, legislators' salaries were $500 per month and remained there until 1966, when voters ratified a revision of the state Constitution, which included the repeal of the $500 salaries and authorized the Legislature, within limits, to adjust their salaries.

From its enactment in 1947, the retirement law had linked pension allowances to the salaries of the incumbents, providing a fluctuating scale of retirement payments.

In 1963, the Legislature added another fluctuation feature, section 9360.9, which "directed adjustment of [pension] allowances to reflect percentage increases in cost of living which had occurred from the base year 1954 up through 1963, with an annual increase in 1964 and each subsequent calendar year proportioned to the cost of living increase in the preceding year." (*Lyon* v. *Flournoy, supra,* 271 Cal.App.2d at p. 777.)

"The voters' repeated refusal to liberalize current salaries [1954 to 1963] had frustrated the law's objective of maintaining the purchasing power of the retirement benefit. Although the 1963 Legislature could not constitutionally increase the salaries of active members, it could and did supply relief to retired

beneficiaries by coupling retirement allowances in 1964 and later years to increases over 1954 cost of living levels. This relief was not required by anything in the retirement law. It did fulfill the law's objective of gearing the allowance to current price levels." (*Lyon* v. *Flournoy, supra,* 271 Cal.App.2d at p. 785.)

Thus, in effect, the Legislature created what the respondents aptly term a "catch-up" provision to provide retirees between 1954 and 1963 with purchasing power closer to current price levels. Obviously, appellant herein does not fall within the category of intended beneficiaries of this provision, inasmuch as his service was from 1971 to 1978, during which time section 9360.10 provided for cost of living adjustments based on any increase in cost of living in the immediately preceding fiscal year, thus maintaining appellant's purchasing power as a retiree close to the current price levels.

Although any other construction of the statutory intent would result in a windfall to appellant, appellant argues that *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859 [148 Cal.Rptr. 158, 582 P.2d 614], supports such a result. We disagree and find *Betts* distinguishable from appellant's case.

In *Betts,* the appellant had served as state treasurer from 1959 to 1967, during which time basic pension allowances under section 9359.1 were based on the fluctuating system under which "a retired member's monthly allowance would be adjusted periodically throughout the term of the pension to reflect changes in the salary payable to the *current* incumbent of the elective office the member had previously held." (*Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 862.)

In 1974, after Betts left office but before retiring, section 9359.1 was amended so that the basic benefit allowance was based on the highest compensation received by the *member* while in office; i.e., a fixed system was substituted for the fluctuating system.

When Betts retired in 1976, he was advised his pension would be calculated on a fixed system resulting in substantially less income than if calculated on the fluctuating system. Betts contended this interfered with this vested contractual right to an earned pension, and the court agreed.

The respondents argued that section 9360.9 provided the "comparable new advantage" required where pension rights are altered to an employee's disadvantage. (*Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765].) The court rejected this argument, pointing out that in this case, the "1963 enactment of section 9360.9 occurred *during* petitioner's term as Treasurer, which ran from 1959 to 1967; the 'fluctuating' system of benefit computation was also in effect during this entire period." (*Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 866.)

"We fully recognize that the effect of our holding is that petitioner thereby receives the benefit of a *double* increment of increase, a troubling result. We can only observe that the Legislature must have intended to provide such benefits to constitutional officers serving between 1963 and 1974 because it left in effect both of the formulae during that 11-year period." (*Betts* v. *Board of Administration, supra,* 21 Cal.3d at p. 867.)

The distinction between *Betts* and appellant herein is that (1) Betts served half of his term during the years which the Legislature intended to be covered by section 9360.9 (i.e., 1959 to 1963); and (2) section 9360.10 did not become effective until *after* Betts left office in January 1967. To the contrary, appellant Younger never served during the years when the legislative salaries were fixed at $500 per month, and when appellant took office, section 9360.10 was in full force and effect and controlling.

■ As to appellant's contention that respondent board's calculation and payment of cost of living pension benefits under section 9360.9 to former Attorney General Thomas C. Lynch, who took office after January 1, 1966,[2] constitutes an administrative construction of section 9360.9 which construction should be adopted by the courts, we disagree.

■ "[A]n administrative agency charged with carrying out a particular statute must adopt some preliminary construction of the statute as a basis upon which to proceed. . . . [And] the administrative interpretation of a statute will be accorded great respect by the courts and will be followed if not clearly erroneous. [Citations.] But such a tentative administrative interpretation makes no pretense at finality and it is the duty of this court, when such a question of law is properly presented, to state the true meaning of the statute finally and conclusively, even though this requires the overthrow of an earlier erroneous administrative construction. [Citations.] The ultimate interpretation of a statute is an exercise of the judicial power. [Citations.]" (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].)

■ Therefore, although great weight should be given to respondent board's administrative act based on their special expertise in the field, here it appears that the administrative construction of the statute is inconsistent with the legislative intent.

■ Appellant also contends that his basic pension benefits for his two terms of service must be calculated in accordance with the pension laws existing at the time he first took office in 1971. Inasmuch as this issue was first raised by ap-

---

[2]The 1974 amendment to section 9360.9 limited that section to those first elected prior to January 1, 1966.

pellant in his reply brief, we need not and do not reach it. "It is well settled that a point raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present such point before. [Citations.]" (*Duncanson-Harrelson Co.* v. *Travelers Indemnity Co.* (1962) 209 Cal.App.2d 62, 70 [25 Cal.Rptr. 718].) Here, no justification is demonstrated for appellant's failure to raise this issue in his opening brief. On the contrary, the brief reflects not an inadvertent omission of this issue but a deliberate decision not to pursue it.

Appellant's opening brief states that the "sole issue presented by this appeal" is the propriety of the court's ruling with respect to cost of living increases. In a footnote, the brief then explains; "In view of *Olson* v. *Cory,* appellant is not pursuing such basic pension benefit issue on this appeal, but has limited the scope of this brief to the question of appellant's cost of living pension benefits."

Respondents, in their brief, correctly state that appellant has conceded the ruling as to the basic allowance issue. Respondents' brief therefore addresses only the cost of living issue.

This court granted permission to amici curiae, the Los Angeles Police Protective League and the California Judges Association, to file briefs in support of appellant. Those briefs, however, did not address the sole issue raised by appellant, but rather challenged the trial court's ruling on the issue of basic pension benefits. Thereafter, appellant filed his reply brief and explained: "Although Younger did not address in his opening brief respondents' miscalculation of his basic pension benefits, in light of the important questions of law raised by both respondents and amicus curiae on that subject, Younger will discuss his entitlement to such basic pension benefits, *infra.*" We have concluded that this explanation of appellant's delay does not amount to a "good reason" for failing to raise the issue initially. Under these circumstances, where a deliberate decision has been made to accept a portion of the trial court's ruling, we think it unlikely that any good reason could be shown. (See *Duncanson-Harrelson Co.* v. *Travelers Indemnity Co., supra,* 209 Cal.App.2d 62.)

Nor is the issue reviewable by virtue of the fact it was raised by amici curiae. ■ "[W]e are confronted by the rule that an amicus curiae must accept the case as it finds it and . . . 'friend of the court' cannot launch out upon a juridical expedition of its own unrelated to the actual appellate record. . . . '[T]he rule is universally recognized that an appellate court will consider only those questions properly raised by the appealing parties. Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be

considered [citations].'" (*Pratt* v. *Coast Trucking, Inc.* (1964) 228 Cal.App.2d 139, 143 [39 Cal.Rptr. 332].)

Therefore, for the reasons set forth above, the judgment is affirmed.

McClosky, J., and Amerian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 16, 1983. Mosk, J., did not participate therein.