TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

```
--------------------------
                          :
OPINION                   :  No. 87-202
                          :
    of                    :  SEPTEMBER 10, 1987
                          :
JOHN K. VAN DE KAMP       :
   Attorney General       :
                          :
ANTHONY S. DaVIGO         :
Deputy Attorney General   :
                          :
----------------------------------------------------------------
```

THE BOARD OF ADMINISTRATION OF THE CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM has requested an opinion on the following question:

Is a state legislator who served during and after the term commencing in 1967 and who, on September 30, 1974, applied for retirement "under conditions of reapportionment" upon the termination of his second term on December 2, 1974, eligible for retirement on said date?

CONCLUSION

A state legislator who served during and after the term commencing in 1967 and who, on September 30, 1974, applied for retirement "under conditions of reapportionment" upon the termination of his second term on December 2, 1974, is not eligible for retirement on said date when the statute authorizing such retirement is repealed prior to the effective date of the retirement.

ANALYSIS

For purposes of this opinion we are apprised of the following chronology:

A member of the State Senate commenced his first term on January 2, 1967. On September 4, 1969, Government Code section 9359.01, a provision of the Legislator's Retirement Law, was amended to provide as follows:

"A Member of the Senate or Assembly who is not returned to office, or who chooses not to run, when the boundaries of the Senate or Assembly district,

respectively, in which he was resident, when last elected to the Senate or Assembly, respectively, are altered pursuant to a reapportionment of legislative districts, or who resigns his office upon election or appointment to another public office during the term in which the boundaries of the Senate or Assembly district, respectively, in which he was resident, when last elected to the Senate or Assembly, respectively, are altered pursuant to a reapportionment of legislative districts, may be retired, upon his written application to the board, at the conclusion of his current term provided the member is credited with a minimum of four years service.

"A written application for retirement may be filed at any time during the term of office of the member, or within thirty (30) days after the expiration of his term of office. Any application which does not specify a different date as the effective date of retirement applied for shall be deemed to be an application for retirement as of the day following the expiration of the term of office of the member.

"This section shall not apply to persons first elected to the Senate or Assembly after December 31, 1969."

(Stats. 1969, ch. 1582, § 1.)[1] On September 30, 1974, the member applied for retirement under that section as of the termination of his second term on December 2, 1974. On October 7, 1974, one week after the date of application, but nearly two months prior to the expiration of the member's term, the statute was repealed by urgency legislation (Stats. 2d Ex. Sess. 1974, ch. 1, § 2), effective immediately (see Cal. Const., art. IV, § 8, subd. (c)(2)). The inquiry presented is whether the member, who did not seek reelection, was and is entitled to retirement benefits as of December 2, 1974.[2]

The nature and extent of retirement rights are to be determined initially by the terms of the enactments establishing the retirement plan, in conjunction with any judicial construction of that or similar legislation at the time the employment relationship was established, and with existing law, including the reservation of the essential attributes of the power to govern. (Lyon v. Flournoy (1969) 271 Cal.App.2d 774, 782-783.)

Section 9359.01 provided in the first paragraph that upon the occurrence of the prescribed conditions a member ". . . may be retired, upon his written application to the board, at the conclusion of his current term . . ." and in the second paragraph that ". . . [a]ny application which does not specify a different date as the effective date of retirement applied for shall be deemed to be an application for retirement as of the day following the expiration of the term . . ." (Emphases

_____

[1]As first added (Stats. 1965, ch. 688, § 1), see 46 Ops.Cal.Atty.Gen. 28, 30 (1965).

[2]Members of the Legislature are generally eligible to retire (1) at age 60 with four or more years of service, (2) at any age with 20 or more years of service, or (3) at any age on a reduced basis with 15 years of service. (Gov. Code, §§ 9359, 9359.16.)

added.)  The application of these provisions, had they remained in force, to the situation presented is clear; the retirement date applied for and established by law was December 2, 1974, the day following the expiration date of the member's term.  Conversely, the repeal of the statute prior to the termination of his term precluded its application to the member.

The date of the <u>application</u> for retirement, which ". . . may be filed at any time during the term of office . . ." or within thirty days thereafter, is otherwise fortuitous, and the fact that the member submitted his application for retirement prior to repeal is insignificant.  The suggestion to the contrary arises from the words ". . . may be <u>retired, upon his written application</u> to the board . . . ." (Emphasis added.)  Does the phrase "upon his . . application" establish the date on which benefits accrue?  In <u>Long Beach Fed. S. & L. Assn.</u> v. <u>Federal Home Loan Bk. Bd.</u> (1960) 189 F.Supp. 589, 612, the court said:

> "'The word "upon," as a preposition indicating when something happens or is to be done, means, according to Webster, "with little or no interval thereafter."' Kirk v. United States, 9 Cir., 1950, 185 F.2d 185, at page 188.  It means 'at the time of' the happening of an event, as, when something is required to be done 'upon' the death of a person, it means as soon after the moment of death as preparations and arrangements can reasonably be made."

(And see <u>Youngstown Steel</u> v. <u>State Bd. of Equal.</u> (1957) 148 Cal.App.2d 205, 208 - "property returned by customers upon rescission of the contract of sale.")  But the preposition is contextually variable.  In <u>Para</u> v. <u>Para</u> (1985) 1 Va.App. 118, 336 SE.2d 157, 161, "upon request of either party" or "upon filing with the court" was defined as "in consequence of or following" rather than "at the time of."  Similarly, "upon recommendation of the commission" connotes "on condition that," indicating a state of dependence.  (<u>Lauterbach</u> v. <u>City of Centralia</u> (1956) (49 Wash.2d 550) 304 P.2d 656, 661.)  In the context in which the preposition appears in Government Code section 9359.01, followed immediately by the clause "at the conclusion of his current term," expressly designating the time of retirement, there can be no doubt that it signifies "in consequence of" or "on condition of" rather than "at the time of."

We proceed to the constitutional dimension.  The federal constitution prohibits any state from passing any law impairing the obligation of contracts (U.S. Const., art. I, § 10; see also Cal. Const., art. I, § 9) and from depriving a person of property without due process of law (U.S. Const., Amend. XIV; see also Cal. Const., art. I, § 7).[3]  (66 Ops.Cal.Atty.Gen. 418, 421 (1983); 64

---

[3]Also to be noted is Government Code section 9606:

> "Any statute may be repealed at any time, except when vested rights would be impaired.  Persons acting under any statute act in contemplation of this power of repeal."

(And see 65 Ops.Cal.Atty.Gen. 475, 480 (1982).)

Ops.Cal.Atty.Gen. 192, 210 (1981).) Generally, neither vested property rights nor the obligation of contracts may be destroyed or impaired by subsequent legislation. (Coombes v. Getz (1932) 285 U.S. 434, 442, 448; 66 Ops.Cal.Atty.Gen., supra, 421.)

Numerous California cases recite an established principle of law without specific reference to constitutional sources. In State of California v. Industrial Accident Commission (1959) 175 Cal.App.2d 674, 676-677, for example, the court reiterated a settled theorem:

"The repeal of a law does not validate a contract or other transaction which, before the repeal, was invalid. Conversely, the repeal of a statute does not ordinarily divest a right that is vested and complete at the time of the repeal. But where the right is not vested but inchoate, and the right or the remedy given by the statute is not of common-law origin, the right falls and the statutory remedy ceases, even after commencement of an action, on repeal, without a saving clause, of the statute, unless the right was converted into final judgment before the repeal, or unless there is subsequent law that enables the court to try and determine the right.

"The repeal of a statute conferring civil rights or powers operates to deprive the citizens of all such rights and powers that are at the time inchoate, incomplete, and unexercised. Thus, the repeal of a statute takes away the remedies afforded by it and defeats actions or proceeding pending under it at the time of the repeal, particularly where the cause of action was created and the remedy given by the statute and was unknown to the common law." (Emphases added.)

(See also Governing Board v. Mann (1977) 18 Cal.3d 819, 830-831.) Of course, the statute in question created a right not of common law origin, and its repealer contained no saving clause.

Among those rights which fall within the protection of the "contract clauses" of the state and federal constitutions, are retirement benefits. In the context of a comprehensive analysis of the constitutional status of retirement benefits of public[4] officers and employees, the court in Lyon v. Flournoy, supra, 271 Cal.App.2d at 781, involving the Legislators' Retirement Law, declared:

". . . There exists in California today a body of decisional law placing earned retirement rights within the shelter of the prohibition against contract impairment, without specific citation of either the federal or state clauses. (See, for example, Kern v. City of Long Beach, supra, 29 Cal.2d at pp. 850, 853.) Certainly the

_____

[4]Where it is claimed that the state has impaired the obligation of its own contract, an initial inquiry arises concerning the ability of the state to enter into an agreement surrendering an essential attribute of its sovereignty. (Cf. California Teachers Assn. v. Cory (1984) 155 Cal.App.3d 494, 510-512; Valdes v. Cory (1983) 139 Cal.App.3d 773, 789-791.) This reserved powers doctrine does not pertain, however, to a purely financial obligation. (66 Ops.Cal.Atty.Gen. 418, 423 (1983); 62 Ops.Cal.Atty.Gen. 589, 592-593 (1979).)

California pension decisions have never rejected the federal clause as a source of the protection. It is now too late to do so. California law places earned pension rights of public officers and employees under the protection of the contract clause regardless of any characterization adopted by the federal courts."

(See 60 Ops.Cal.Atty.Gen. 153, 159 (1977).)

Olson v. Cory (1980) 27 Cal.3d 532 concerned a statute purporting to place a limit on cost-of-living increases previously provided for judicial salaries. It was held that a judge entering office is deemed to do so in consideration of -- at least in part -- salary benefits then offered by the state for that office; if salary benefits are diminished by the Legislature during a judge's term, the judge is nevertheless entitled to the contracted benefits during the remainder of such term. (Id., at 539; and see 60 Ops.Cal.Atty.Gen. 153, supra.) Similarly, in Betts v. Board of Administration (1978) 21 Cal.3d 859, 863, it was held that the elements of compensation (e.g., retirement benefits) for a public office (e.g., State Treasurer) become contractually vested upon acceptance of employment. Further, such contractual interests include not only those in effect upon commencement of employment, but also those conferred during the employee's tenure. (Olson v. Cory, supra, at 540; Betts v. Board of Administration, supra, at 866.) In 67 Ops.Cal.Atty.Gen. 510 (1984) it was concluded that a school district providing health and life insurance benefits to board members may not discontinue such benefits during the board members' current terms.

With respect to the situation under review, it is clear that Government Code section 9359.01 was in effect during, and repealed shortly before the termination of, the member's second term. The application of the principles set forth above would ordinarily compel the conclusion that the member was, during his then current term, entitled to those benefits.

Where, however, a public employer reduces retirement benefits pursuant to an express reservation of the right to do so, no vested right is impaired. (International Assn. of Firefighters v. City of San Diego (1983) 34 Cal.3d 292.) In that case, the court sustained an increase in the rate of contribution of employees to the retirement system without providing commensurate added benefits, as being made pursuant to the charter and ordinances establishing the retirement system, prescribing the employees' vested rights, and reserving the power to "make such revisions in rates of contribution of members as it deems necessary to provide the benefits for which the rates for normal contributions are required to be calculated." (Id., at 299, 302.) The court explained in part (id., at 300-302):

"Plaintiff nonetheless contends that the increase in the rate of employee contributions ordered by the board without any corresponding benefit to employees somehow illegally destroyed vested pension rights of its members. (Any employee rights actually vested are expressly protected under City's plan. (§ 24.0102.)) In support of its contention, plaintiff cites the well settled principle that: 'A public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment. Such a pension right may not be destroyed, once vested, without impairing a contractual obligation

of the employing public entity.' (Betts v. Board of Administration (1978) 21 Cal.3d 859, 863; see Kern v. City of Long Beach (1947) 29 Cal.2d 848, 853.)

". . . . . . . . . . . . . . . . . . . . . . . .

"While it is clear, therefore, that employees' 'vested' contractual rights may not be destroyed or impaired, plaintiff fails to identify exactly what employee rights are vested under City's retirement system, and thereby misses the crucial distinction between the cases cited and the manner before us.

". . . . . . . . . . . . . . . . . . . . . . . .

"What distinguishes each of [the cases cited by plaintiff] from the one before us is the nature of the contractual rights which became vested in plaintiff's members upon their acceptance of employment. In the cases relied upon by plaintiff, employees' vested contractual rights were modified by amendment of the controlling provisions of the retirement system in question to reduce (or abolish) the net benefit available to the employees. In the present case, no modification was made in the retirement system; instead, the revision in the factor representing future compensation of employees and the resulting revision in the rate of contribution of employees were made pursuant to the charter and ordinances which delineate City's retirement system and prescribe the employees' vested rights."

Such an express reservation appears to be applicable to the Legislators' Retirement Law. By initiative effective November 8, 1966, the following was added as part of article IV, section 4, of the California Constitution:

"The Legislature may, prior to their retirement, limit the retirement benefits payable to members of the Legislature who serve during or after the term commencing in 1967."[5]

This provision of fundamental law, comprising in effect one of the integral terms of the retirement plan, and constituting an express reservation of power to limit retirement benefits, was in force throughout the member's two terms. By its repeal of Government Code section 9359.01, the Legislature limited the special retirement benefits of a few members by eliminating a fortuitous circumstance as a basis for premature eligibility. In our view, this limitation fell well within the reserved power. While International Assn. of Firefighters v. City of San Diego, supra, 34 Cal.3d

---

[5]This language, part of an extensive constitutional revision, was added in conjunction with statutory enactments (Stats. 1st Ex. Sess. 1966, ch. 163, §§ 2 & 4) substantially increasing legislative compensation and making related changes in the method of computing retirement allowances commencing with the 1967 Regular Session. (Gov. Code, §§ 8901 & 9359.12.)

292, concerned an increase in the rate of employee contributions, we perceive no basis for not applying the same principles to changes of eligibility requirements.[6]

Of course, article IV, section 4, would not prevent the operation of the constitutional prohibition against the impairment of contracts as to those rights or powers which were vested and complete prior to its enactment. However, as previously noted, the constitutional provision was in effect prior to the initiation of the member's first term.

Further, article IV, section 4, applies by its own terms only to legislative limitations imposed "prior to" an affected member's retirement. In our view, the term "retirement" has the same meaning as it does in Government Code section 9359.01. As discussed in connection with that section, retirement occurs upon the date designated in the application where such date is consistent with the date prescribed by law, rather than on the date of the application or of its receipt. In the context of the situation here considered, that date occurred "at the conclusion of his current term," on December 2, 1974, after the limitation by repeal became effective by urgency legislation.

We conclude that a state legislator who served during and after the term commencing in 1967 and who, on September 30, 1974, applied for retirement "under conditions of reapportionment" upon the termination of his second term on December 2, 1974, is not eligible for retirement on said date when the statute authorizing such retirement is repealed prior to the effective date of the retirement.

*  *  *  *  *

---

[6]In Fazekas v. University of Houston (Tex. Civ. App. 1978) 565 S.W.2d 299, appeal dism. 440 U.S. 952, the Board of Regents, pursuant to its statutory rule-making power, lowered the retirement age of all personnel from 70 to 65 years. Prior to this action, plaintiff had entered into a contract of employment "[s]ubject to all rules and regulations of the University of Houston . . . ." The court held that by virtue of the words "subject to," meaning "subordinate to" or "limited by," neither the state nor the federal constitutional provisions respecting the impairment of contractual obligations insulated the employee from the effect of a subsequently adopted regulation requiring retirement at an earlier age. (Id., at 307.)