TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-103 |
| of | : | |
| | : | May 23, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE LIZ FIGUEROA, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1.      May the city council of a general law city reduce the salary of its members during their current terms of office?

2.      May the city council of a general law city reduce the additional salary of an elected mayor during his or her current term of office?

3.      May the city council of a general law city reduce the health and welfare benefits of its members, including the elected mayor, during their current terms of office?

CONCLUSIONS

1.      The city council of a general law city may not reduce the salary of its members during their current terms of office.

2.      The city council of a general law city may not reduce the additional salary of an elected mayor during his or her current term of office.

3.      The city council of a general law city may not reduce the health and welfare benefits of its members, including the elected mayor, during their current terms of office.

ANALYSIS

During a recent city election, a slate of candidates for city council campaigned on the promise of reducing the salaries and benefits of city council members. The slate was elected, and now the new council members wish to fulfill their campaign promises, as do the city's voters. May the salaries and benefits of the council members be reduced during their current terms of office?

The three questions presented for resolution concern two separate statutory schemes. The one (Gov. Code, §§ 36514.5-36516.5) **Footnote No. 1** deals with salaries, reimbursement for expenses, and compensation in general. Section 36514.5 provides: "City councilmen may be reimbursed for actual and necessary expenses incurred in the performance of official duties." Section 36515 states: "The compensation of a city councilman appointed or elected to fill a vacancy is the same as that payable to the member whose office was vacated." Section 36516 provides:

"(a) A city council may enact an ordinance providing that each member of the city council shall receive a salary, the amount of which shall be determined by the following schedule:

"(1) In cities up to and including 35,000 in population, up to and including three hundred dollars ($300) per month.

"(2) In cities over 35,000 up to an including 50,000 in population, up to and including four hundred dollars ($400) per month.

"(3) In cities over 50,000 up to and including 75,000 in population, up to an including five hundred dollars ($500) per month.

"(4) In cities over 75,000 up to and including 150,000 in population, up to and including six hundred dollars ($600) per month.

"(5) In cities over 150,000 up to and including 250,000 in population, up to and including eight hundred dollars ($800) per month.

"(6) In cities over 250,000 population, up to and including one thousand dollars ($1,000) per month.

"For purposes of this section the population shall be determined by the last preceding federal census, or a subsequent census, or estimate validated by the Department of Finance.

"(b) At any municipal election, the question of whether city council members shall receive compensation for services, and the amount of compensation, may be submitted to the electors. If a majority of the electors voting at the election favor it, all of the council members shall receive the compensation specified in the election call. Compensation of council members may be increased beyond the amount provided in this section or decreased below the amount in the same manner.

"(c) Compensation of council members may be increased beyond the amount provided in this section by an ordinance or by an amendment to an ordinance but the amount of the increase may not exceed an amount equal to 5 percent for each calendar year from the operative date of the last adjustment of the salary in effect when the ordinance or amendment is enacted. No salary ordinance shall be enacted or amended which provides for automatic future increases in salary.

"(d) Any amounts paid by a city for retirement, health and welfare, and federal social security benefits shall not be included for purposes of determining salary under this section provided the same benefits are available and paid by the city for its employees."

Section 36516.1 states:

"A mayor elected pursuant to Sections 34900 to 34904, inclusive, of the Government

Code may be provided with compensation in addition to that which he receives as a councilman. Such additional compensation may be provided by an ordinance adopted by the city council or by a majority vote of the electors voting on the proposition at a municipal election." **Footnote No. 2**

Finally, section 36516.5 provides:

"A change in compensation does not apply to a councilman during his term of office; however, the prohibition herein expressed shall not prevent the adjustment of the compensation of all members of a council serving staggered terms whenever one or more members of such council becomes eligible for a salary increase by virtue of his beginning a new term of office."

The other statutory scheme (§§ 53200-53210) deals specifically with providing health and welfare benefits for the officers and employees of a city, as well as other local agencies. Subdivision (a) of section 53201 states:

"The legislative body of a local agency, subject to such conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees, and retired members of the legislative body who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that such charges are not covered by payments from funds under the jurisdiction of the local agency as permitted by Government Code Section 53205."

Section 53202.3 provides:

"All plans, policies or other documents used to effectuate the purposes of this article shall provide benefits for large numbers of employees. No plan or policy may be approved pursuant to this article unless its issuance or the payment of benefits thereunder is otherwise lawful in this State. This article does not authorize the issuance of any group policy or the representation of any insurance benefits as group insurance unless the policy concerning which the representation is made is designated as a group policy by the applicable provisions of the Insurance Code."

Section 53205 states:

"From funds under its jurisdiction, the legislative body may authorize payment of all, or such portion as it may elect, of the premiums, dues, or other charges for health and welfare benefits of officers, employees, retired employees, former elective members specified in subdivision (b) of Section 53201, and retired members of the legislative body subject to its jurisdiction.

"Those expenditures are charges against the funds. If the employer pays any portion of the premiums, dues, or other charges for the health and welfare benefits, any dividends paid or premiums refunded or other rebates or refunds under any of those health and welfare benefits up to the aggregate expenditures of the employer for the benefits are the employer's property. The excess, if any, shall be applied by the employer for the benefit of the employees or their dependents generally."

Finally, section 53208 provides:

"Notwithstanding any statutory limitation upon compensation or statutory restriction relating to interest in contracts entered into by any local agency, any member of a legislative body may participate in any plan of health and welfare benefits permitted by this article."

In analyzing these various statutes, we apply well established rules of statutory interpretation. "The overriding objective of statutory construction is to ascertain and effectuate legislative intent." (*Larson* v. *State Personnel Bd.* (1996) 28 Cal.App.4th 265, 276.) "In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) Every word, phrase, and sentence in a statute should, if possible, be given significance. (*Penasquitos, Inc.* v. *Superior Court* (1991) 53 Cal.3d 1180, 1186.) Each word is to be given its "usual and ordinary meaning." (*Da Fonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562.) "`A statute must be construed "in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts."'" (*People* v. *Hull* (1991) 1 Cal.4th 266, 272.) "`A statute should be construed whenever possible so as to preserve its constitutionality.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.)

In addressing the three questions presented, we will assume that the current salaries and benefits of the city council members and mayor are fixed in amount and that the proposed reductions would not be as a result of a prior arrangement, either contractual or prescribed by statute or ordinance. (See *International Assn. of Firefighters* v. *City of San Diego* (1983) 34 Cal.3d 292, 299, 302; 73 Ops.Cal.Atty.Gen. 296, 300-304 (1990); 70 Ops.Cal.Atty.Gen. 214, 218 (1987); 65 Ops.Cal.Atty.Gen. 66, 69-70 (1982); 47 Ops.Cal.Atty.Gen. 61, 62 (1966); 39 Ops.Cal.Atty.Gen. 200, 202 (1962).)

1.    Reducing a Council Member's Salary

The first question to be resolved is whether the members of a city council may reduce their own salaries during their current terms of office. We conclude that they may not do so.

A city council may set the salary of its members at $1 per month or up to $1,000 per month, depending upon the size of the city. (§ 36516, subd. (a).) It can exceed the statutory limit set for the size of its city by "5 percent for each calendar year from the operative date of the last adjustment of the salary . . . ." (§ 36516, subd. c).) There is no similar limit for reducing the salary of council members. Under subdivision (a) of section 36516, the council may reduce the salaries of its members to whatever amount it chooses. So also may the voters at a municipal election. (§ 36516, subd. (b).)

Section 36516.5, however, provides: "A change in compensation does not apply to a councilman during his term of office . . . ." Reading section 36516.5 in light of section 36516, we find that the term "compensation" must include "salary," whether increased or decreased. The fact that certain increases in salary may avoid the general prohibition (§ 36516.5) does not mean that decreases in salary are outside the scope of the prohibition.

It may be argued that the obvious purpose in delaying changes in compensation is to protect the city's funds from improvident council action in increasing the salaries of its members during their current terms of office. No similar purpose would be served by delaying decreases in the salaries; indeed, immediate implementation would conserve a city's funds. Here, for example, if five council candidates campaign on the promise of reducing council member salaries, what purpose would be served by preventing an immediate reduction once they are elected?

That question must be answered by determining what the Legislature intended in enacting section 36516.5. First, the Legislature might well believe that decreases in salary should be delayed when they are imposed by the electorate rather than by the council members themselves. (See, e.g., Stats. 1972, ch. 591, § 1.) The language of section 36516.5, however, does not draw such a distinction or expressly disclose a purpose that would prevent its application to all decreases in salary. On balance, we do not find the necessary legislative intent to ignore the plain meaning of the terms used in section 36516.5.

Moreover, we must interpret section 36516.5 in the manner that would uphold its constitutionality. Would a reduction in a council member's compensation during his or her term of office impair the obligation of a contract (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) or deprive the council member of a vested property right (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a))?

Generally, neither the obligation of contracts nor vested property rights may be impaired or destroyed by subsequent enactment. (*Coombes* v. *Getz* (1932) 285 U.S. 434, 442, 448; 70 Ops.Cal.Atty.Gen., *supra*, 216.) It is true, again generally, that the terms and conditions relating to public employment are controlled by statute or ordinance rather than by ordinary contract standards. (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 537-538; *Markman* v. *County of Los Angeles* (1973) 35 Cal.App.3d 132, 134-135; 72 Ops.Cal.Atty.Gen. 1, 6 (1989); 67 Ops.Cal.Atty.Gen. 510, 511 (1984).) Thus no one has a vested right in public employment except insofar as the right is conferred by statute or other valid regulation; public employees have no vested right in any particular measure of compensation or benefits; and compensation may be modified or reduced by proper statutory authority. (*Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 150; 67 Ops.Cal.Atty.Gen., *supra*, 511.)

On the other hand, public employment gives rise to certain obligations that are protected by the contract clause of the Constitution. **Footnote No. 3** These include the right to the payment of a salary that has been earned (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 308-309) **Footnote No. 4** as well as other aspects of employment (see generally *California League of City Employee Associations* v. *Palos Verdes Library Dist.* (1978) 87 Cal.App.3d 135, 139; 67 Ops.Cal.Atty.Gen., *supra*, 511-512).

The employment relationship between a city council member and the city is contractual, and the elements of compensation and benefits for such an office become contractually vested upon acceptance of employment. (Cf. *Olson* v. *Cory*, *supra*, 27 Cal.3d at 538-539, fn. 3; *Betts* v. *Board of Administration* (1978) 21 Cal.3d 859, 863; 77 Ops.Cal.Atty.Gen. 50, 53 (1994); 73 Ops.Cal.Atty.Gen., *supra*, 302; 67 Ops.Cal.Atty.Gen., *supra*, 512.) In *Olson* v. *Cory*, *supra*, 27 Cal.3d 532, for example, the court held that a judge entering office is deemed to do so in consideration of--at least in part--salary benefits then offered by the state for that office; if salary benefits are diminished by the Legislature during a judge's term, the judge is nevertheless entitled to the contracted benefits during the remainder of such term. In *Betts* v. *Board of Administration*, *supra*, 21 Cal.3d 859, the court held that the elements of compensation, including retirement benefits, for the office of State Treasurer become contractually vested upon acceptance of employment. (See also *Legislature* v. *Eu* (1991) 54 Cal.3d 492, 528, 533-534.) **Footnote No. 5** In 67 Ops.Cal.Atty.Gen. 510, *supra*, we concluded that a school district providing health and life insurance benefits to board members may not discontinue such benefits during the board members' current terms.

Interpreting the language of section 36516.5 in light of these constitutional principles, we find that it forbids decreases in compensation during a council member's current term of office. Of course, as a practical matter, council members may contribute back to the city whatever portion of their salaries they wish. No statutory authorization is necessary for such voluntary action to take place.

We conclude in answer to the first question that a city council of a general law city may not reduce the salary of its members during their current terms of office.

2.    Reducing an Elected Mayor's Additional Salary

An elected mayor of a general law city is a member of the city council. (§ 34903.) His or her salary as a member of the council would be subject to the same constraints as set forth in answer to the first question. While such salary may be reduced by the council, section 36516.5 prohibits the reduction from taking place during the mayor's current term of office.

An elected mayor, however, may also receive "compensation in addition to that which he receives as a councilman." (§ 36516.1.) May this additional amount of compensation be reduced during the mayor's current term of office? We conclude that it may not.

As quoted above, section 36516.1 allows the electorate or the city council to set the amount of the mayor's additional compensation at whatever level it chooses. The statutory grant of authority would include reducing the amount from that previously chosen. Does section 36516.5, however, prevent the reduction from taking place during the mayor's current term of office?

Section 36516.5's prohibition is as follows: "A change in compensation does not apply to a councilman during his term of office . . . ." Although a mayor is a member of the city council, he or she is not normally referred to as a "councilman." The additional salary authorized by section 36516.1 would seemingly not be received as a "councilman"; rather, the additional compensation would be granted for the performance of mayoral duties.

Nevertheless, as indicated in response to the first question, we must interpret section 36516.5 so that its application is consistent with the Constitution. Accordingly, it prohibits a city council from reducing a mayor's additional compensation during his or her current term of office. Such construction preserves the mayor's contractual and vested property rights.

We thus conclude in answer to the second question that an elected mayor's additional compensation may not be reduced by the city council during the mayor's current term of office.

3.      Reducing a Council Member's Benefits

The final question concerns whether a city council may reduce the amount of health and welfare benefits received by council members, including the mayor, during their current terms of office. We conclude that it may not do so.

As quoted above, section 53208 authorizes city council members to participate in a health and welfare benefits plan adopted under the provisions of sections 53200-53210 "[n]otwithstanding any statutory limitation upon compensation . . . ." The statutory limitation of section 36516.5 would thus be inapplicable to the furnishing of the benefits in question. (See *People* v. *De La Cruz* (1993) 20 Cal.App.4th 955, 963.) Sections 53200-53210 do not expressly authorize or prohibit decreases in health and welfare benefits for officers and employees of a public agency. The benefits, however, must be part of a plan "for large numbers of employees."
(§ 53202.3; see also § 36516, subd. (a).) Whether the benefits under such a plan may be adjusted upward or downward during an incumbent's term of office would depend upon the conditions established by the city council in providing for such benefits. Subdivision (a) of section 53201 authorizes a city council to provide benefits to its members "subject to such conditions as may be established by it."

As we have indicated in response to the first two questions, unless the preexisting plan itself authorizes decreases in benefits during a council member's current term of office (which we have assumed is not the case), any decreases must await the end of the current term to meet constitutional requirements. Hence, we conclude in answer to the third question that the city council of a general law city may not reduce the health and welfare benefits of its members, including the elected mayor, during their current terms of office.

* * * * *

**Footnote No. 1**
All unidentified section references hereafter are to the Government Code.

**Footnote No. 2**

Sections 34900-34904 set forth the procedures for electing a mayor in general law cities.

**Footnote No. 3**

Issues respecting the impairment of contracts are frequently viewed in the related context of the due process clause of the federal and state Constitutions as a deprivation of a vested property interest. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a); 67 Ops.Cal.Atty.Gen., *supra*, 511, fn. 6; 66 Ops.Cal.Atty.Gen. 418, 421 (1983).) Our focus herein will be upon the contract clause.

**Footnote No. 4**

Where it is claimed that the state has impaired the obligation of its own contract, an initial inquiry arises concerning the ability of the state to enter into an agreement surrendering an essential attribute of its sovereignty. (Cf. *California Teachers Assn. v. Cory* (1984) 155 Cal.App.3d 494, 510-512; *Valdez v. Cory* (1983) 139 Cal.App.3d 773, 789-791.) This reserved powers doctrine does not pertain, however, to a purely financial obligation. (70 Ops.Cal.Atty.Gen., *supra*, 217, fn. 4.)

**Footnote No. 5**

Such contractual interests include not only those in effect upon commencement of employment, but also those conferred during the term of office. (*Olson* v. *Cory*, *supra*, 27 Cal.3d at 540; *Betts* v. *Board of Administration*, *supra*, 21 Cal.3d at 866; 70 Ops.Cal.Atty.Gen., *supra*, 218.)