[No. B143615. Second Dist., Div. Five. Mar. 20, 2001.]

SAVE THE SUNSET STRIP COALITION et al., Plaintiffs and Appellants, v.
CITY OF WEST HOLLYWOOD et al., Defendants and Respondents;
SUNSET MILLENNIUM ASSOCIATES, LLC, Real Party in Interest and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to rules 976 and 976.1 of the California Rules of Court, parts I., II., the indicated portions of part III., and all of part IV. are certified for publication.

COUNSEL

Moskowitz, Brestoff, Winson & Blinderman, Joel S. Moskowitz and Nelson E. Brestoff for Plaintiffs and Appellants.

Michael Jenkins, City Attorney; Richards, Watson & Gershon and Gregory M. Kunert for Defendants and Respondents.

Latham & Watkins, James L. Arnone and Alejandro E. Camacho for Real Party in Interest and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Plaintiffs, Save the Sunset Strip Coalition, Gigi Verone and Geoffrey Smith, appeal from a judgment denying a writ of mandate. Plaintiffs challenged actions of the defendants, City of West Hollywood and its city council (collectively, the city), with respect to a development project. The developer, Sunset Millennium Associates, LLC (Sunset), is the real party in interest. In the published portion of this opinion, we discuss Vehicle Code section 21101, subdivisions (a) and (f), as they relate to the installation of a cul-de-sac on a street entirely within the city's boundaries, which implements the circulation element of the city's general plan. We affirm the judgment.

## II. BACKGROUND

The city adopted the "Sunset Specific Plan" to guide the development of that portion of Sunset Boulevard that lies within its borders. The area in question is commonly known as the Sunset Strip. The Sunset Specific Plan assumed, based on a market study and other factors, that certain types of development were likely. The Sunset Specific Plan capped development at a level lower than would have been allowed under the city's general plan. In connection with the Sunset Specific Plan, the city went through the process required by the California Environmental Quality Act (CEQA), Public Resources Code[1] section 21000 et seq. A final environmental impact report (EIR) was approved and certified in 1996. It is undisputed the time for challenging the sufficiency of the 1996 EIR has expired.

---

[1] All further statutory references are to the Public Resources Code except where otherwise noted.

Sunset proposes to develop two of eight areas encompassed by the Sunset Specific Plan. Sunset intends to construct thereon a 371-room hotel, a restaurant, and retail and commercial office space. The trial court found the present project differed from the development assumptions underlying the Sunset Specific Plan in certain respects. The trial court found: "The proposed development increases the square footage of hotel space and retail space within geographic areas 4 and 5 of the [Sunset] Specific Plan by approximately 256 thousand square feet, and reduces commercial office space and restaurant space by approximately 170 thousand square feet in the same area. There is a net increase of 86 thousand square feet, which is approximately 15 percent of the developed space contemplated in the [Sunset] Specific Plan."

The EIR approved in 1996 is a "Master EIR." (§ 21156 et seq.; Guidelines,[2] § 15175 et seq.) Section 21157.1 provides in part: "[Certification of a Master EIR] allow[s] for the limited review of subsequent projects that were described in the master [EIR] as being within the scope of the report, in accordance with the following requirements: [¶] (a) The lead agency for a subsequent project shall be the lead agency or any responsible agency identified in the master environmental impact report. [¶] (b) The lead agency shall prepare an initial study on any proposed subsequent project. This initial study shall analyze whether the subsequent project may cause any significant effect on the environment that was not examined in the master environmental impact report and whether the subsequent project was described in the master environmental impact report as being within the scope of the report. [¶] (c) If the lead agency, based on the initial study, determines that a proposed subsequent project will have no additional significant effect on the environment, as defined in subdivision (d) of Section 21158, that was not identified in the master environmental impact report and that no new or additional mitigation measures or alternatives may be required, the lead agency shall make a written finding based upon the information contained in the initial study that the subsequent project is within the scope of the project covered by the master environmental impact report. No new environmental document nor findings pursuant to Section 21081 shall be required by this division." This requirement is restated in Guidelines section 15177, which also provides: "Whether a subsequent project is within the scope of the Master EIR is a question of fact to be determined by the lead agency based upon a review of the initial study to determine whether there are additional significant effects or new additional mitigation measures or alternatives required for the subsequent project that are not already discussed in the

---

[2]All references to Guidelines are to the "Guidelines for Implementation of the California Environmental Quality Act," California Code of Regulations, title 14, section 15000 et seq.

Master EIR." (Guidelines, § 15177, subd. (c).) The 1996 EIR was also a "Program EIR." With respect to a Program EIR, Guidelines section 15168, subdivision (c) provides: "Use With Later Activities. Subsequent activities in the program must be examined in the light of the program EIR to determine whether an additional environmental document must be prepared. [¶] (1) If a later activity would have effects that were not examined in the program EIR, a new initial study would need to be prepared leading to either an EIR or a negative declaration. [¶] (2) If the agency finds that pursuant to [Guidelines,] Section 15162 [Subsequent EIR], no new effects could occur or no new mitigation measures would be required, the agency can approve the activity as being within the scope of the project covered by the program EIR, and no new environmental document would be required." Guidelines section 15162, subdivision (a)(1) requires preparation of a subsequent EIR after an EIR has been certified or a negative declaration has been adopted when "[s]ubstantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase in the severity of previously identified significant effects[.]"

As required by section 21157.1, the city prepared an initial study on the present project. The city determined the project would not have any additional significant effect on the environment that was not identified in the Master EIR, and therefore no new environmental document or findings were required. Plaintiffs filed a petition for a writ of mandate in the trial court. They challenged the city's determination the project would not have any additional significant effect on the environment that was not identified in the Master EIR. In addition, they disputed the city's creation of a cul-de-sac on one of its streets, Alta Loma Road, and the legality of a development agreement calling in part for Sunset to make a $5.2 million payment to the city.

The trial court found as follows: "Petitioner's contention that the millennium project does not 'fit within the environmental assumptions' of the EIR is rejected, because the contention does not accurately enunciate the test required by CEQA. The test is whether the administrative record contains substantial evidence to support the City's determination that the development will have no additional significant effect upon the environment that was not identified in the EIR and that no new or additional mitigation measures or alternative may be required. The proposed development increases the square footage of hotel space and retail space within geographic areas 4 and 5 of the [Sunset] Specific Plan by approximately 256 thousand square feet, and reduces commercial office space and restaurant space by

approximately 170 thousand square feet in the same area. There is a net increase of 86 thousand square feet, which is approximately 15 percent of the developed space contemplated in the [Sunset] Specific Plan. . . . Substantial evidence that these changes will not have a significant impact on traffic as compared to the [Sunset] Specific Plan may be found [in the city's Initial Study]."

As to the city's creation of a cul-de-sac on Alta Loma Road the trial court concluded: "The development also calls for the alteration of Alta Loma Road, a residential side street one block west [of] La Cien[e]ga Boulevard, by blocking the street with a cul-de-sac so that it cannot be used for thru [*sic*] traffic. Petitioner contends that such action violates Section 21101 of the Vehicle Code. The administrative record, however, contains substantial evidence that the City complied with Section 21101[, subdivision] (f) of the Vehicle Code and that the street is not a regionally significant traffic corridor."

With respect to the $5.2 million payment which was part of the development agreement, the trial court concluded: "Finally, petitioner[s] contend[] that the development agreement provides for a cash payment from the developer to the City of 5.2 million dollars, and that such provision constitutes an illegal sale of the City's police power to the developer. Petitioner however cites no authority to support its contention that it is illegal for a municipality to charge a developer such a fee, or any authority for the proposition that the City must identify some particular cost attributable to the development to justify such a fee."

### III. DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

■ Plaintiffs challenge the city's creation of a cul-de-sac on Alta Loma Road pursuant to Vehicle Code section 21101. They contend the city was required to find that the road was no longer needed for vehicular traffic but failed to do so and could not have done so. We conclude the city was not required to make any such finding.

■ The state has preempted the field of motor vehicle traffic regulation. (Veh. Code, § 21; *Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 548, 549-550 [183 Cal.Rptr. 73, 645 P.2d 124]; *City of Lafayette v. County of Contra Costa* (1979) 91 Cal.App.3d 749, 755 [154 Cal.Rptr. 374].) A city

*See footnote, *ante*, page 1172.

has no authority over vehicular traffic control except as expressly provided by the Legislature. (*Rumford v. City of Berkeley, supra,* 31 Cal.3d at p. 550; *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1106-1107 [72 Cal.Rptr.2d 134].) Statutory authority to prescribe traffic rules is strictly construed. (*Rumford v. City of Berkeley, supra,* 31 Cal.3d at p. 550; *City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 858, 864 [280 Cal.Rptr. 368]; *People v. Moore* (1964) 229 Cal.App.2d 221, 228 [40 Cal.Rptr. 121].)

■ Vehicle Code section 21101 authorizes local authorities to take specified actions with respect to street closure and vehicular traffic. Vehicle Code section 21101 provides: "Local authorities, for those highways under their jurisdiction, may adopt rules and regulations by ordinance or resolution on the following matters: [¶] *(a) Closing any highway to vehicular traffic when, in the opinion of the legislative body having jurisdiction, the highway is either of the following:* [¶] *(1) No longer needed for vehicular traffic.* [¶] (2) The closure is in the interests of public safety and all of the following conditions and requirements are met: [¶] . . . [¶] (b) Designating any highway as a through highway and requiring that all vehicles observe official traffic control devices before entering or crossing the highway or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to the intersection. [¶] (c) Prohibiting the use of particular highways by certain vehicles . . . . [¶] (d) Closing particular streets during regular school hours for the purpose of conducting automobile driver training programs in the secondary schools and colleges of this state. [¶] (e) Temporarily closing a portion of any street for celebrations, parades, local special events, and other purposes . . . . [¶] *(f) Prohibiting entry to, or exit from, or both, from any street by means of islands, curbs, traffic barriers, or other roadway design features to implement the circulation element of a general plan* adopted pursuant to Article 6 (commencing with Section 65350) of Chapter 3 of Division 1 of Title 7 of the Government Code. The rules and regulations authorized by this subdivision shall be *consistent with the responsibility of local government to provide for the health and safety of its citizens.*" (Italics added.)

Plaintiffs contend the city had no authority to close Alta Loma Road to through traffic absent a showing the street was "[n]o longer needed for vehicular traffic." (Veh. Code, § 21101, subd. (a)(1).) The city argues that it complied with the requirements of Vehicle Code section 21101, subdivision (f) *in that the cul-de-sac installation was consistent with the general plan* circulation element. Nevertheless, plaintiffs argue, subdivision (f) of Vehicle Code section 21101 did not authorize the city to close the road *independent*

of subdivision (a)(1) of that statute; that is, the two subdivisions must be applied together and not separately.

We consider the proper construction of the statute and its application to the undisputed facts as a matter of law. (*Estate of Butler* (1980) 27 Cal.3d 781, 788 [166 Cal.Rptr. 711, 613 P.2d 1245]; *City of Poway v. City of San Diego, supra,* 229 Cal.App.3d at p. 859.) We disagree with plaintiffs' assertion. Plaintiffs' contention is contrary to the clear language of the statute. ■ Our Supreme Court has described the standard of statutory review as follows: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. [Citation.]" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) ■ Under the plain and clear language of Vehicle Code section 21101, the prerequisite to closure of a street under subdivision (a)(1), a finding that it is "[n]o longer needed for vehicular traffic," has no application to subdivision (f). There is no cross-reference, express or implied, to subdivision (a)(1) of section 21101 in subdivision (f) of that statute. Vehicle Code section 21101 authorizes local authorities to regulate motor vehicle traffic under six separate subdivisions, each of which addresses a separate situation and each of which stands on its own. To adopt plaintiffs' interpretation would require that we rewrite the statute by adding language to Vehicle Code section 21101, subdivision (f). That we cannot do. (Code Civ. Proc., § 1858; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557]; *Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996]; *Wilson v. Safeway Stores, Inc.* (1997) 52 Cal.App.4th 267, 272 [60 Cal.Rptr.2d 532]; *Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1696-1697 [8 Cal.Rptr.2d 614].)

Moreover, Vehicle Code section 21101, subdivision (a)(1) grants authority only for a *complete closure* of a street *to all vehicular traffic.* (*Rumford v. City of Berkeley, supra,* 31 Cal.3d at pp. 551-554; *City of Lafayette v. County of Contra Costa, supra,* 91 Cal.App.3d at pp. 756-757.) It is undisputed the present case involves the creation of a cul-de-sac, not the complete closure of a street to vehicular traffic. The street remains open to vehicular traffic

and no residence or business on Alta Loma Road is directly or indirectly inaccessible. Therefore, Vehicle Code section 21101, subdivision (a)(1) is inapplicable and the city was not required to find that Alta Loma Road was "[n]o longer needed for vehicular traffic." (Veh. Code, § 21101, subd. (a)(1).)

Plaintiffs rely on *City of Poway v. City of San Diego, supra,* 229 Cal.App.3d at pages 864-867, and *City of Hawaiian Gardens v. City of Long Beach, supra,* 61 Cal.App.4th at pages 1106-1112, for the proposition sub-division (f) of Vehicle Code section 21101 does not authorize creation of a cul-de-sac *independent* of subdivision (a)(1) of that section, i.e., without a finding the road is no longer needed. Neither case so held. Moreover, nothing in those opinions compels the conclusion plaintiffs advance.

In *Poway,* the City of San Diego closed to all traffic its portion of a major arterial roadway that continued beyond its city limits. (*City of Poway v. City of San Diego, supra,* 229 Cal.App.3d at pp. 851-852.) The action infringed upon the rights of other citizens of the greater metropolitan area. (*Id.* at pp. 866-867.) The Court of Appeal for the Fourth Appellate District, Division One, held Vehicle Code section 21101, subdivision (f) did not create broad new authority to close roadways; the subdivision delegated only the power narrowly defined therein. (229 Cal.App.3d at p. 865.) Our Fourth Appellate District colleagues concluded, "[S]ection 21101, subdivision (f) should not be interpreted to allow one municipality to close its portion of a regionally significant, safely designed and maintained roadway for reasons of self-interest, to the detriment of those other members of the motoring public who seek to travel the entirety of that road." (*Id.* at p. 866.) *Poway* did not discuss Vehicle Code section 21101, subdivision (a). *Poway* did not hold the City of San Diego could only have closed the highway under Vehicle Code section 21101, subdivision (f), if it had properly found the road was no longer needed for vehicular traffic as required by subdivision (a)(1).

Plaintiffs assert *City of Hawaiian Gardens v. City of Long Beach, supra,* 61 Cal.App. 4th at pages 1111-1112, held that subdivision (f) of Vehicle Code section 21101 is not "stand-alone" authority but a clarification of subdivision (a); therefore, to create a cul-de-sac the city would have had to meet the requirements of subdivision (a) of the statute *in addition to* the requirements of subdivision (f). We disagree with plaintiffs' reading of that case. In *City of Hawaiian Gardens,* Division Four of the Court of Appeal for this appellate district held a "collector" road running adjacent to a freeway through Hawaiian Gardens and into Long Beach could not, consistent with Vehicle Code section 21101, subdivision (f), be closed at the border between the two

cities. (*City of Hawaiian Gardens v. City of Long Beach, supra,* 61 Cal.App.4th at pp. 1103-1106.) The evidence showed the street in question served a regionally significant function; further, its closure would have a significant negative impact in Hawaiian Gardens and would hamper the provision of emergency services. (*Id.* at pp. 1111-1112.) Therefore, our Division Four colleagues concluded, closing the road would be inconsistent with the city's duty, specified in the statute, to provide for the health and safety of citizens. (*Ibid.*) *City of Hawaiian Gardens* did not hold that Vehicle Code section 21101, subdivision (f) was a clarification of subdivision (a). *City of Hawaiian Gardens* did not hold that the requirements of subdivision (a) of section 21101 were subsumed into subdivision (f).

The present case stands in contrast to the facts of *City of Poway* and *City of Hawaiian Gardens.* The city has not closed to traffic a major street running through one or more adjacent cities. It has created a cul-de-sac on a one-block long residential street situated entirely within its borders. There was no evidence placing a cul-de-sac on Alta Loma Road would interfere with the delivery of emergency services or otherwise adversely affect the public health and safety.

We conclude the city, in creating a cul-de-sac on Alta Loma Road pursuant to Vehicle Code section 21101, subdivision (f), was not required to find that the street was "[n]o longer needed for vehicular traffic" as provided in subdivision (a)(1) of that statute. As discussed above, the requirements of Vehicle Code section 21101, subdivision (a)(1) have no application to subdivision (f) of that statute.[3]

---

[3]In their reply brief, plaintiffs assert for the first time on appeal that the city's creation of a cul-de-sac on Alta Loma Road was not an implementation of the city's general plan. At oral argument, counsel asserted the undisputed facts established that the general plan language was insufficient to allow resort to Vehicle Code section 21101, subdivision (f); in other words, absent amendment of the general plan, the city could never create a cul-de-sac. Consistent with well-established authority, absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [93 Cal.Rptr.2d 364]; *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1144 [61 Cal.Rptr.2d 207]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 763-766 [60 Cal.Rptr.2d 770]; *Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322 [44 Cal.Rptr.2d 902]; *Frankel v. Kizer* (1993) 21 Cal.App.4th 743, 747-748, fn. 4 [26 Cal.Rptr.2d 268]; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 [13 Cal.Rptr.2d 432]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788]; *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 975 [236 Cal.Rptr. 706]; *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 320 [231 Cal.Rptr. 820]; *Balboa Ins. Co. v. Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250]; *Younger v. State of California* (1982) 137 Cal.App.3d 806, 812-813 [187 Cal.Rptr. 310];

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*

## IV. DISPOSITION

The judgment is affirmed. Defendants, the City of West Hollywood and the City Council of the City of West Hollywood, and real party in interest, Sunset Millennium Associates, LLC, are to recover their costs on appeal, jointly and severally, from plaintiffs, Save the Sunset Strip Coalition, Gigi Verone and Geoffrey Smith.

Grignon, J., and Weisman, J.,† concurred.

A petition for a rehearing was denied March 30, 2001, and appellants' petition for review by the Supreme Court was denied June 20, 2001.

---

*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 641 [178 Cal.Rptr. 167].) Moreover, it does not appear that this argument was raised in the trial court. It cannot be raised for the first time on appeal. (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758].)

*See footnote, *ante*, page 1172.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.