Filed 1/24/22  McNenny v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| KATHERINE MCNENNY, | B304303 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS170257) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Katherine McNenny, in pro. per.; and Grant Beuchel for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Deputy City Attorney, Scott Marcus and Blithe S. Bock, Assistant City Attorneys, and Jonathan H. Eisenman, Deputy City Attorney for Defendant and Respondent.

————————————

This action follows the Skid Row Neighborhood Council Formation Committee's (Committee's) unsuccessful attempt to form a neighborhood council for the Skid Row area in Downtown Los Angeles.  The Committee describes Skid Row as "a neighborhood in Downtown Los Angeles that has historically been a place where low-income (and no-income) individuals can find housing and supportive social services."  The City of Los Angeles (the City) certified 2017 election results showing a majority of voters voted against the formation of the Skid Row Neighborhood Council.  Appellant Katherine McNenny, a member of the Committee, in propria persona, argues on appeal that numerous irregularities occurred before, during, and after the election.

The dispositive issue is whether the trial court erred in concluding that the Committee failed to show it was entitled to the only relief it sought—a judicial determination reversing the results of the election and ordering the City to form a Skid Row Neighborhood Council.  Appellant demonstrates no error in the trial court's conclusion.  Therefore, we affirm the judgment in favor of the City.

## BACKGROUND

The City's Department of Neighborhood Empowerment was created to "make government more responsive to local needs." (See L.A. County Charter, art. IX, § 900; see *id.*, art. IX, § 901.) The City's charter provides: "Neighborhood councils shall include representatives of the many diverse interests in communities and shall have an advisory role on issues of concern to the neighborhood." (*Id.*, art. IX, § 900.)

In 2017, at the time of the challenged election, section 22.819 of the Los Angeles Administrative Code provided

2

in part: "A stakeholder within an existing certified Neighborhood Council who desires forming a separate certified Neighborhood Council within the boundaries of one or more existing certified Neighborhood Councils shall submit a subdivision petition to the Department of Neighborhood Empowerment (Department) on a form approved by the Department." (Former L.A. Admin. Code, § 22.819, subd. (a).) The same ordinance required the Department to conduct an election within 90 days of the approval of a subdivision petition. (*Id.*, subd. (b).)

The Committee, Jeff Page, a Skid Row resident and committee member, and appellant McNenny (collectively referred to as petitioners), then represented by counsel, "submitted a petition to DONE [Department of Neighborhood Empowerment] seeking assistance in creating a new Skid Row Neighborhood Council in between the existing neighborhood councils of the Downtown Los Angeles Neighborhood Council (DLANC) and Historic Cultural Neighborhood Council (Historic). Petitioners' petition required a vote under the Ordinance."[1]

"DONE conducted an election on April 6, 2017. The election took place at physical polling locations as well as online. The canvass of votes revealed Petitioners lost the election to establish the Skid Row Neighborhood Council, with 826 'No' votes and 766 'Yes' votes." The makeup of the latter tallies was 581 online votes in favor of the neighborhood council and 807 votes against it, and 185 paper ballots in favor of the formation of the neighborhood council and 19 votes against it.

---

[1] The quoted background facts are from the trial court's tentative opinion, which it later adopted as its final opinion.

"Petitioners thereafter filed three election challenges with DONE, alleging that DLANC improperly interfered with the election.  On May 13, 2017, an election challenge panel conducted a hearing to consider Petitioners['] vote challenge[s].  The election challenge panel upheld the election challenges and recommended an independent investigation.  Ultimately, DONE, through Liu [DONE's general manager], rejected the election challenge panel[']s recommendation and determined Petitioners' election challenges were without merit and certified the election results."  According to petitioners, DONE certified the results on May 19, 2017.[2]

DONE offered to assist petitioners in the next election.  Specifically, on May 19, 2017, it represented:  "While the final result of your election challenges determination does not result in the formation of a Skid Row Neighborhood Council at this time, this outcome does not mean a Skid Row Neighborhood Council Subdivision Petition cannot be filed again the next time the Department accepts applications.  The current schedule to open the application process for Neighborhood Council subdivision is October 2018, but this timeline could change to later this year if the 2018 Neighborhood Council elections are pushed to 2019.  We would be happy to work with you and the Skid Row Neighborhood Council Forming Committee to file your Subdivision Petition again."

"On July 19, 2017, petitioners filed their initial writ petition."  Petitioners filed their fourth amended writ petition October 17, 2019 without leave from the trial court.  The trial

_____

[2]  Petitioners did not seek to enjoin the certification of the election.

court noted that although the fourth amended writ petition was not properly filed, the court chose to consider it because the City suffered no prejudice.  Petitioners sought relief under Code of Civil Procedure sections 1094.5 (administrative mandate) and 1085 (traditional mandate).

In their petition, petitioners stated:  "A New Election is not an Appropriate Remedy."  (Boldface & underscoring omitted.)  Instead, petitioners requested the trial court order the formation of a Skid Row neighborhood council.  Petitioners stated, "[T]he only appropriate remedy should be to grant the SRNC-FC its own neighborhood council outright."  In its trial brief, petitioners requested the trial court "order DONE to certify the election in favor of" a Skid Row neighborhood council.  Petitioners reiterated that "the only appropriate remedy" would be a judicial order creating a Skid Row neighborhood council.

The trial court denied petitioners' request for both administrative and traditional mandate.  The trial court concluded:  "Petitioners expressly state 'ordering a new election is not an appropriate remedy.'"  "Instead, Petitioners desire a court order declaring SRNCFC [the Committee] the winner of an election.  They argue 'the only appropriate remedy should be to grant SRNCFC its own neighborhood council outright.' "  At the hearing on the fourth amended petition, the trial court stated:  "The relief you request over and over again in your petition is not that we hold another election" but that the court decide "by judicial fiat" that "there is a neighborhood council . . . ."  Ultimately the court concluded that "there is just no relief I can give you."

In its written order, the trial court explained:  "Petitioners have not provided any legal authority that would require or

5

permit this court to change the results of an election based on allege[d] procedural or technical problems with that election. Petitioners expressly stated 'a new election is not an appropriate remedy' here and that the only 'appropriate remedy' is to grant SRNCFC 'its own neighborhood council outright.'" "Petitioners do not establish any entitlement to a traditional writ of mandate."

Page, in propria persona, filed a premature notice of appeal before the trial court entered judgment;[3] Page filed an opening brief also in propria persona. McNenny, in propria persona, filed a notice of cross-appeal from the judgment and adopted the arguments in Page's opening brief. Thereafter, McNenny and the City informed this court that Page died. No personal representative or successor of interest has moved to be substituted for Page, and no successor has been otherwise identified. (See Code Civ. Proc., §§ 377.31, 377.32.) For these reasons, McNenny is the sole appellant; she filed her reply brief in pro per. The City is the only respondent on appeal.[4]

---

[3] Although sometimes an order denying a petition for writ of mandate is an appealable order, that rule does not apply in this case because the trial court's minute order contemplated a further judgment. (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 191–192.) The minute order states, "Counsel for Respondent is to prepare a proposed judgment, serve on the opposing parties for approval as to form, wait ten days after service for any objections . . . ." We need not further address whether Page's notice of appeal was timely, because McNenny timely appealed from the judgment.

[4] In the trial court, petitioners named the City, DONE, the Los Angeles City Council and Grayce Liu, the general manager

## DISCUSSION

### 1. General Appellate Principles

Although counsel represented McNenny at oral argument, no counsel represented her on the appellate briefs. A pro per appellant "is not entitled to special treatment and is required to follow the rules." (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523.) We review those rules to assist the parties in understanding our reasoning herein.

On appeal, the judgment or order challenged on appeal is presumed to be correct. (*Singman v. IMDB.com* (2021) 72 Cal.App.5th 1150.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1101.)

An appellant must provide citations to the appellate record directing the court to the supporting evidence for each factual assertion contained in the appellant's briefs. When an opening brief fails to make appropriate references to the record to support points urged on appeal, we may treat those points as waived or forfeited. (See, e.g., *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384.) "It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.)

---

for DONE. The trial court concluded that the City is the "single Respondent."

Stated otherwise, an appellant has the burden to demonstrate error based on sufficient legal argument supported by citation to an adequate record.[5] (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557.) Absent a showing of justification, this court does not consider arguments raised for the first time in a reply brief.[6] (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3.) Also, in presenting an argument, an appellant must rely on authority that is citable. (See Cal. Rules of Court, rule 8.1115.)

[5] On appeal, appellant relies heavily on the "non-administrative record" without showing that any of the exhibits in it is admissible. The trial court asked petitioners counsel, "[W]hat is a non-administrative record?" The court asked how any exhibit in the "non-administrative record" was authenticated. Appellant's trial counsel responded: "I was going to put on witness testimony, Your Honor." Trial counsel did not present witness testimony and made no further effort to authenticate the "non-administrative record." In its written order, the trial court excluded the "non-administrative record." On appeal, appellant does not argue the trial court erred in excluding the "non-administrative record." Because appellant does not argue or demonstrate that the exhibits should have been admitted, we do not consider this "non-administrative record."

[6] We thus do not consider arguments appellant raises for the first time in her reply brief, for example, appellant's argument that the trial court incorrectly believed appellant rejected the election challenge review panel's recommendation.

8

## 2. Petitioners Conceded that The Trial Court Could Deny its Petition for Administrative Relief

On appeal, appellant argues that the trial court erred in denying the Committee's request for an administrative writ of mandate. "Section 1094.5 of the Code of Civil Procedure governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency." (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313.) Petitioners' request for the administrative writ of mandate was based essentially on a pre-election e-mail campaign allegedly by a neighborhood council whose area would have been reduced if the Skid Row Neighborhood Council had been formed.[7] Petitioners successfully challenged the e-mail campaign before a panel of election commissioners, but DONE overruled the Panel's recommendation for further investigation and certified the election.[8]

---

[7] Petitioners' three challenges were as follows: (1) use of the City logo for campaign e-mail by opposing neighborhood council; (2) improper endorsement by an opposing neighborhood council; and (3) improper electioneering by a candidate.

[8] The Election Challenge Panel recommended that "[w]ithin 60 days, there shall be an independent investigation to determine if any laws were broken and how many votes were affected; if the number of votes affected is greater than the vote difference in the election, then the election result shall be overturned. Within 90 days, if the election result is not changed after the investigation above, then the election shall be held again, without online voting." DONE rejected this remedy, finding that "redoing the election is not appropriate for these challenges even if they were determined to be valid."

We do not consider appellant's arguments that the trial court erred in denying the petition for administrative relief. In the trial court, petitioners' counsel conceded that the section 1094.5 petition should be denied. Petitioners' counsel stated: "[T]he administrative hearing is not really what's at issue, your honor. It's more 1085 relief we're requesting." The court asked petitioners' counsel: "So you can agree I can . . . deny your 1094.5 claim?" Counsel responded, "I wouldn't object to it." The court then stated, "The 1094.5 relief is denied." Under these circumstances, appellant cannot resurrect its abandoned 1094.5 challenge on appeal. (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 936 [" ' "[A]ppealing parties must adhere to the theory (or theories) on which their cases were tried." ' [Citation.]".)

### 3. Appellant Demonstrates No Error in Denying the Petition for Writ of Mandate

"A writ of mandate may be issued by any court 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station.' (Code Civ. Proc., § 1085, subd. (a).) The showing required to be entitled to mandate is that the public agency has a clear, present, and ministerial duty to afford the relief sought, and that the petitioner has a clear, present, and beneficial right to performance of that duty. [Citations.] An act is 'ministerial' when a public officer is required to perform it in a prescribed manner when a given state of facts exists, in obedience to the mandate of legal authority and without regard to his, her, or its own opinion concerning the act's propriety." (*Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 408.)

10

"In reviewing the trial court's ruling on a petition for a writ of mandate, we 'defer[ ] to a trial court's factual determinations if supported by substantial evidence,' whereas the trial court's interpretation of a statute 'is subject to de novo review.' [Citation.]" (*McGroarty v. Los Angeles Unified School Dist.* (2021) 61 Cal.App.5th 258, 266.) Where, however, an agency's interpretation of a statute regulating an agency's "extent of its power and responsibilities is entitled to a measure of respect." (*Villanueva v. Fidelity National Title Co.* (2021) 11 Cal.5th 104, 132.) Appellant demonstrates no clear, present, and ministerial duty to afford the relief appellant seeks—the formation of a Skid Row Neighborhood Council.

It appears that appellant's request for writ of mandate is based on three alleged irregularities during and after the election—the location of the polls, the use of online voting, and the City's failure to preserve the online vote data. Appellant, however, fails to show that any of these alleged errors requires a judicial reversal of the election rejecting forming a Skid Row Neighborhood Council, and in place of that election result, an order forming a Skid Row Neighborhood Council.

### a. Location of the polls

Appellant challenges the location of the polling places, arguing that the City was required to place them all within the location proposed for the new subdivision, that is Skid Row. Appellant argues that the location of the polls violated former Los Angeles Administrative Code section 22.819, which was effective at the time of the election.

Former section 22.819 stated that (1) "The Department shall conduct an election within the boundaries stated in the subdivision petition," and (2) "A stakeholder is eligible to vote in

11

the election if the person is a stakeholder in the proposed area for subdivision or in any of the Neighborhood Councils that are proposed for subdivision." (Former L.A. Admin. Code, § 22.819, subd. (b).) Following amendment, the ordinance now provides that a neighborhood council subdivision "election shall occur within the boundaries of the existing certified Neighborhood Council or Neighborhood Councils." (L.A. Admin. Code, § 22.820, subd. (g).)

Appellant's argument fails on several grounds. First, appellant cites no admitted evidence identifying the boundaries stated in the subdivision petition, i.e., the boundaries within which appellant argues the polls should have been located. Therefore, there is no record support for appellant's premise that the City placed polls outside the boundaries stated in the subdivision petition.

Second, as the City argues, its interpretation of the former ambiguous statute is entitled to deference. (See *Villanueva v. Fidelity National Title Co.*, *supra*, 11 Cal.5th at p. 132.) The phrase "boundaries stated in the subdivision petition" could refer either to the boundaries of the area to be carved out (here the Skid Row neighborhood) or the boundaries of the area from which the carving is to be done (here the Historic Core neighborhood and the Downtown Los Angeles neighborhood). Because persons in the boundaries of any neighborhood council proposed for subdivision were eligible to vote in the election, the City's interpretation permitting polling places throughout those councils is consistent with the entire scheme of the law. (Former § 22.819, subd. (b).) The election did not concern only whether the residents of Skid Row wanted a new neighborhood council. (Cf. *20th Century Ins. Co. v. Superior Court* (2001)

90 Cal.App.4th 1247, 1275 [" '[I]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citation.]"].) Appellant's proposed statutory construction ignores the deference owed to the City's interpretation of its power and responsibilities, an interpretation confirmed by the later amendment.

Third, assuming arguendo that the City erred in placing polls outside the proposed Skid Row Neighborhood Council, appellant offers *no* legal argument supporting the conclusion that any such placement requires the reversal of the election results and declaring the formation of a Skid Row Neighborhood Council.

### b.    Use of online voting

Appellant challenges the City's use of online voting. Appellant states that at the time of the election, there was a "citywide ban on all electronic online voting." Appellant states that conduct by DONE made it "impossible to determine which voters actually had an interest in registering for the 2017 Skid Row Subdivision election." Appellant contends that residents of Skid Row had less time to vote than online voters.

Appellant offers no record support for any of these assertions. Assuming arguendo, the correctness of appellant's assertions, she offers *no* legal authority supporting the conclusion that any of these errors requires reversing the election results and declaring the Committee the victor in the election. In short, appellant has forfeited her challenge to online voting. (*Keyes v. Bowen*, *supra*, 189 Cal.App.4th at p. 656.)

### c.    Preservation of online vote data

It appears that appellant's principal concern is the City's alleged failure to preserve documentation to support the online

13

vote data. Petitioners requested the City preserve and produce "a list of all persons who successfully cast a vote in the 2017 Skid Row election . . . ." Appellant argues that the "City was legally responsible for the preservation of, and production of, all electronic online voter tallies . . . ." Appellant states petitioners requested "a court determination ruling in favor of Petitioners [as] . . . winners [of] the 2017 Skid Row Subdivision election due to the City's failure to uphold it's [*sic*] preservation and production duties as Administrator of an election."

The City counters that it provided the information requested, but appellant failed to include it in the record. The City did not supplement the record or otherwise demonstrate that it provided petitioners the documentation supporting the online vote data, and for purposes of this appeal, we assume that the City failed to preserve the online vote data. That assumption is supported by the declaration of a deputy city attorney who stated that Everyone Counts—the entity with whom the City contracted to count the online votes "went out of business and was acquired by Votem in or around October 2018." The deputy city attorney further averred that "Votem did not retain EC [Everyone Counts] data 'for security reasons.' "

### i. *Governing ordinances*

Los Angeles Election Code section 1302, subdivision (a) requires the city clerk to preserve for six months after an election "voted polling place ballots, voted Vote-By-Mail Ballots, Vote-By-Mail Ballot Return Envelope, spoiled ballots, canceled ballots, unused Vote-By-Mail Ballots surrendered by voters pursuant to Section 1020, ballot receipts, tally sheets, copies of the Index of Registered Voters used as the voting record, challenge lists, and assisted voters lists."

14

Los Angeles Election Code section 1220 provides: "Any magnetic or electronic storage medium used for the ballot count program and any magnetic or electronic storage medium containing election results shall be kept in a secure location and shall be retained for six months following any City conducted election or so long thereafter as any contest involving the vote at the City conducted election remains undetermined."[9]

### ii. *Motion to compel*

On March 18, 2019, petitioners filed a motion to compel. Petitioners argued that the City had the duty to preserve documents from Everyone Counts (the entity the City hired to conduct the online election count). Petitioners indicated that Everyone Counts "may have been merged into another corporation named 'Votem Inc.,' on or about October of 2018." Petitioners contended that the City's failure to obtain the documents was akin to the spoilation of evidence. The parties disputed whether the City actually produced all of the requested documents.

The trial court ultimately denied petitioners' motion to compel. The trial court indicated that petitioners could raise the absence of evidence at trial. At trial, the court reaffirmed this stating, "[W]e discussed the fact there was no evidence

_____

[9] At oral argument, the City argued for the first time that these ordinances do not apply to the neighborhood council election. We decline to consider the City's untimely argument. (*People v. Harris* (1992) 10 Cal.App.4th 672, 686 ["It is a clearly understood principle of appellate review, so well established as to need no citation to authority, that contentions raised for the first time at oral argument are disfavored and may be rejected solely on the ground of their untimeliness"].)

15

concerning the votes that can be reviewed by this court. I said you can argue about that; right?" Petitioners' counsel agreed. At trial, the court also recognized "the City's vendor destroyed the records . . . ."

### iii. *Appellant demonstrates no reversible error on appeal*

On appeal, appellant argues that the trial court abused its discretion "by not ordering the City to abide by it's [*sic*] own election laws and produce said electronic online voter tallies as obligated by duty, to preserve . . . ." Appellant asks this court to "compel the City to produce the electronic online voter tallies . . . [or] otherwise deem Petitioners as the winners of the 2017 Skid Row Subdivision election." Appellant states: "The City has not, and admittedly cannot, validate any of the electronic online votes. That clearly proves the City cannot prove that Petitioners lost our 2017 Skid Row Subdivision election."

The trial court could not compel the City to produce documents that no longer exist.[10] Therefore, we reject appellant's argument that the trial court abused its discretion in refusing to compel the City to produce the online voter data. This leads to considering what are the consequences of the City's failure to produce the online voter data. The trial court concluded that petitioners were not entitled to a judicial declaration that they won the election. The trial court emphasized that was the only remedy petitioners sought. The limited relief petitioners sought below is fatal to appellant's

---

[10] Appellant's counsel below confirmed that there was nothing more the trial court could do regarding the motion to compel.

challenge to the City's failure to preserve the online voting records.

Appellant cites no relevant authority for the proposition that a court can order a new winner of an election. Appellant relies on *Wilks v. Mouton* (1984) 159 Cal.App.3d 792, which is no longer citable after the Supreme Court granted review and issued its own opinion.

Appellant also relies on *People v. Lucas* (2014) 60 Cal.4th 153, a capital murder case. *Lucas* does not concern an election or support the proposition that the trial court had legal authority to overturn the election and declare a new winner. In sum, assuming that the City did not preserve the online election data as the City's Election Code requires it to do, appellant fails to show the trial court erred in concluding that the only remedy petitioners sought below—an order requiring the formation of a Skid Row Neighborhood Council—was legally available. (*Yield Dynamics, Inc. v. TEA Systems Corp.*, *supra*, 154 Cal.App.4th at pp. 556–557 [appellant required to support argument with relevant legal authority].)

## 4.    Alleged Judicial Bias

Appellant argues the trial court was biased against petitioners. According to appellant, the trial court showed bias by suggesting that petitioners " 'try again' . . . which has never been an option suggested nor implied by Petitioners." Petitioners state that the trial court ignored the evidence that the City did not provide the requested online vote data. Appellant also argues that the judge showed bias by incorrectly interpreting the meaning of section 22.819, subdivision (b). Without identifying evidence or citing to the record, appellant states the court

17

"ignored" the evidence "during the Motion to Compel hearing" and "emotionally devastat[ed]" petitioners.

Although the trial court ruled against petitioners, the record does not support that the trial court was biased. To the contrary, the record indicates the trial court carefully considered petitioners' arguments even though it ultimately ruled in the City's favor. The trial court did not ignore the claim that the City failed to preserve evidence. The trial court offered alternatives to litigation. For example, the court stated: The City "offers to help your clients in the process of having a new petition and a Skid Row Neighborhood Council. This has been pending for two years. It's curious to me that somebody didn't just think let's resubmit our petition and do it again." The court also asked about why petitioners did not seek a restraining order against the City in advance of the election.

Ultimately, after considering petitioners' arguments, the trial court concluded that the "relief you [petitioners] request over and over again in your petition is not that we hold another election . . . . [but that] I decide there is a [Skid Row] Neighborhood Council . . . ."

The record does not suggest that the trial court misunderstood petitioners or ignored them. Instead, it shows the trial court allowed petitioners to file a fourth amended petition even though they did so without leave of the court, and patiently considered all petitioners' claims. The fact that the court ultimately found in favor of the City does not demonstrate bias against appellant or the other petitioners below.

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs.

NOT TO BE PUBLISHED.


                             BENDIX, J.

We concur:


ROTHSCHILD, P. J.


CRANDALL, J.*

---

*  Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.